## Simpson's Appeal.

| 109 | 383 |
| e208 | ¹638 |

1. A distributee of a decedent's estate, to whom a balance in the hands of the administrator was awarded by the Orphans' Court on the adjudication of an account filed within one year from the grant of letters of administration, is not entitled to payment of such award without giving a refunding bond.

2. The fact that such distributee is a trustee does not relieve him from the obligation of giving a refunding bond.

March 25th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN J., absent.

APPEAL from the Orphans' Court of *Philadelphia county:* Of January Term 1885, No. 168.

This was the appeal of Alexander Simpson, Jr., trustee, from a decree of said court refusing to compel payment to him by the Fidelity Insurance Trust and Safe Deposit Company, administrator of the estate of John G. Pusey, deceased, of the sum awarded to him, as trustee, in the adjudication on the account of said administrator, and decree of distribution thereon.

The petition of Alexander Simpson, Jr., trustee, set forth the following facts :—

John G. Pusey died January 17th, 1884. Letters of administration were duly granted to the Fidelity Insurance, Trust and Safe Deposit Company, who filed their account, which embraced personal estate only, and which after proper advertisement was on July 8th and 11th, 1884, audited. On July 17th, 1884, an adjudication was filed wherein after the payment of all debts, etc., the balance of $1,686.91 in cash, and $122.50 in furniture, was awarded to a trustee to be appointed for Mrs. Sarah H. Pusey, widow of decedent.

On July 19th, 1884, the Orphans' Court appointed the petitioner as such trustee, to receive the balance of said estate, and without giving security in accordance with the terms of a family settlement.

Said adjudication has been confirmed absolutely, but said administrators have refused to pay the award unless the petitioner will give to them a refunding bond, which he has declined to do because he believes that no such requirement is necessary under the circumstances aforesaid.

The petitioner averred that no further debts are known to exist and prayed for a citation, &c.

The answer of the administrator admitted the truth of the facts stated in the petition.

The court, after argument, sustained the demand of the administrator for a refunding bond, in the following opinion:—

The authority of the Orphans' Court upon equitable principles, and irrespective of its statutory powers, to exact security for the protection of contingent interests, was very plainly recognized in Duval's Appeal, 2 Wr., 112. The reasoning in that case is applicable to the present, because the mischief is as great to creditors as it there was to remaindermen. The administration account was filed and audited within the year following the testator's death. The formal notice by advertisement was, therefore, in advance of the time at which parties interested in the estate would fairly be held bound to look for it, and before laches could begin to be imputed to them. The party most benefited by an early distribution of the estate was the petitioner, and he not only acquiesced in the prompt action of the accountants, but asked for an order of payment. Under these facts, and following what was said in Palmer's Estate, 40 Leg. Int., 240, we are justified in ordering security against the demands of future claimants to the fund. The petition is accordingly granted subject to that condition, and the bond of the petitioner and the *cestui que trust* is now approved as such security.

The petitioner took this appeal, assigning for error the refusal of the court to compel payment of the award without a refunding bond.

*J. Alex. Simpson*, for the appellant.—We contend that distributees are not required to give refunding bonds, where there has been a decree of distribution of personalty on an account filed, after due advertisement. No Act of Assembly requires such bond. The only Act touching the subject is that of February 24th, 1834, (P. L. 81), by which refunding bonds are only required in the following cases, viz., section 41, where distribution is to be made after presentation of a statement, and without the filing of an account. This is evident also from §§ 38, 39 and 40. The wording of these sections shows that no account is contemplated when such distribution is made, for the known debts are only estimated. In Commonwealth *v.* Snyder, 12 P. F. S., 153, it is held that such distribution is not predicated of a partial or final account. By § 45, a refunding bond is required before distribution of the proceeds of the sale of real estate in partition. By § 52, before execution on a suit for a legacy in the Common Pleas. This also is before account filed, as is evident from §§ 50, 51 and 53. By § 61, where a legacy is charged on real estate, and the legatee desires payment. This also is before account filed,

as is evident from §§ 58, 59 and 60. These are the only sections on the subject, and none of them touch the present case.

In the present case the adjudication and distribution are not made under that Act, but under the Acts of 1832 and 1840. Purd. 445–6, pl. 198–200, which Acts do not require refunding bonds. The Act of 13th April, 1859, P. L. 604, is not in point, for it only requires a refunding bond to be given where the executor, administrator or guardian, whose account is to be audited, is himself required by law to give a refunding bond. And no distinction is drawn in such cases between " creditors, heirs, legatees or ward." In Moorhead's Estate, 29 Pitts., L. J. 291 (S. C., 1 Chest. Co. Rep., 435), the precise point is decided, and HAWKINS, P. J., concludes that "Where an account embracing personal estate has been regularly filed in the Register's office, and advertised, and distribution has been made by the Orphans' Court in due course of audit, the distributees cannot be compelled to give refunding bonds for the shares appropriated to them respectively."

The same conclusion is reached in Clark's Estate, 1 Kulp, 32. Indeed the court below, in their opinion, seem to have conceded that the appellee's demand for a refunding bond had no authority in express statute.

In the absence of statutory authority, is the Orphans' Court justified in ordering security against the demands of future claimants to the fund? It will be noticed that there are no known creditors. It is only possible claimants that are to be protected. If there were such creditors, they should have appeared and claimed at the audit. Kittera's Appeal, 5 Har., 422; Dundas' Appeal, 23 P. F. S., 474; Hammett's Appeal, 2 Nor., 392; Otterson v. Gallagher, 7 Nor., 357; Lex's Appeal, 1 Out., 292, and other cases similar in principle, hold that the Orphans' Court has full and complete jurisdiction in the distribution of the estates of decedents; and that creditors, as well as heirs, devisees, and legatees who fail to claim, are forever barred as to the fund for distribution. This being so, appellee would have been fully protected had it made payment. The Orphans' Court is a court of statutory jurisdiction, and for all that it does must have a statutory power to support it: Franks v. Groff, 14 S. & R., 181; Weyand v. Weller, 39 Penn. St., 443.

Duval's Appeal 2 Wr., 112, relied on by the court below, is essentially different from this. The property there consisted of real estate devised to A. for life with remainder over; it was sold by order of court for payment of debts, and after the payment thereof a balance remained for distribution. Security was ordered, not to protect possible creditors of the decedent, but to protect the corpus for the remaindermen. Authority

13 OUTERBRIDGE—25

for this was found in § 49 of the Act of 24th February, 1834, P. L., 83.

*John Marshall Gest,* (*William P. Gest* with him,) for the appellees.—The argument of the appellant is based upon the assumption that the case is ruled entirely by the Act of February 24th, 1834. It is impossible to understand this Act without a reference to prior legislation. The foundation of the provisions of our law relating to refunding bonds was laid by the English Statute of Distributions, 22 and 23 Car. 2, c. 10, § 8, in which it is provided; "To the end that a due regard be had to creditors, that no such distribution of the goods of any person dying intestate be made till after one year be fully expired after the intestate's death, and that such and every one to whom any distribution and share shall be allotted, shall give bond with sufficient sureties in the said courts, that if any debt or debts truly owing by the intestate shall be afterwards sued for and recovered or otherwise duly made to appear, that then and in every such case he or she shall, respectively, refund, and pay back to the administrator his or her ratable part of that debt or debts, and of the costs of suit and charges of the administrator by reason of such debt, out of the part and share so as aforesaid allotted to him or her, thereby to enable the said administrator to pay and satisfy the debt or debts so discovered after the distribution made as aforesaid."

The first Act passed in this province was the Act of 1693 : Duke of York's Book of Laws, p. 232; 1 Dallas Laws, Appendix, 33. This provided "and every one to whom any shares shall be allotted, shall give bond, with sureties, to the said Register General that if debts afterwards be made to appear, he or she shall refund his or her ratable part thereof and of the executor's or administrator's charges accruing thereby." In 1697, this provision was re-enacted in the same words : Duke of York's Book of Laws, p. 266; 1 Dallas' Laws, Appendix, 34. So, also, in the Act of 1700 : 1 Dallas' Laws, Appendix, 36. In 1705, the English Act of 22 & 23 Car. 2, c. 10, § 8, was adopted verbatim as above, the only change being that the "Orphan's Court" was designated as the proper place for entering the security: 3 Smith Laws, 157. 1 Dallas' Laws, App., 44 ; Hall & Seller's Laws, Ch. 21, p. 32.

The Act of April 19, 1794, § 15, 3 Smith Laws, 149, supplied these Acts as follows :

"To the end that a due regard be had to creditors, no administrators shall be compelled to make such distribution of the goods of any person dying intestate, until one year be fully expired after the intestate's death, and that each and every

one to whom any distribution and share shall be allotted, shall give bond, with sufficient securites in the said Orphan's Court, that if any debt or debts truly owing by the intestate shall be afterwards sued and recovered, or otherwise duly made to appear, that then, and in every such case, he or she shall respectively refund and pay to the administrator his or her ratable part of that debt or debts, and of the costs of suits and charges of the administrator by reason of such debts, out of the part and shares so as aforesaid allotted to him or her, and thereby to enable the said administrator to pay and satisfy the said debt or debts so discovered after the distribution made as aforesaid."

*This has not been reprinted in Purdon's Digest, but we contend that the provisions of this section were not repealed, but reenacted, by the Act of February 24th, 1834, and are still in force.*

It clearly appears from the report of the Commissioners to revise the Civil Code who prepared the Act, that the only modification they intended to make was to allow distributees to procure as security for their bond a mortgage on real estate, or else to authorize the investment of the fund by the court.

Under the old Act of 1794 the practice was settled and uniform. It was said in Swearingen *v.* Pendleton, 4 S. & R., 394, " The exhausting of the assets, *even after the expiration of a year*, in the payment of legacies or distributive shares in prejudice of a creditor without requiring refunding bonds of the legatees or distributees, would amount to a *devastavit.*" And in Patterson *v.* Nichol, 6 Watts, 382 " the avowed object of requiring a refunding bond to be given in both cases (legacies or distribution), was that creditors of the estate of either might be made secure in receiving payment of their claims which was not to be dispensed with in any case :" Logan *v.* Richardson, 1 Barr, 372. In none of these cases, the latter two being decided after the passage of the Act of 1834, was it even hinted that the law was changed in this respect: Scott on the Intestate Law, 180.

The Act of 1834, plainly shows the intention to require refunding bonds in every case of distribution. The Commissioners found them provided for in cases of intestacy by the Act of 1794, and in cases of legacies by the Act of March 21st, 1772, 1 Smith's Laws, 384. There only remained unprovided for a single case, where an executor's account shows a surplus to be distributed under the intestate laws. Accordingly, having followed the former Act in section 41, and the latter in section 52, Purd. Dig., p. 449, pl. 217, a new section (47) was recommended and passed, providing for the only other possible case. The separation of the refunding bond provisions resulted from the revisers following the old intestate Act in section 41 ;

[Simpson's Appeal.]

while sections 47 and 52 refer to section 41, as requiring security generally "in cases of distribution by administrators," or "with respect to distributive shares." Again, section 57 of the Act of 1834, provides: "Executors and administrators making distribution, or paying or delivering any legacies as aforesaid, shall not be liable for the assets so paid or distributed, . . . . . where security shall be taken as is hereinbefore provided." This reduced all the provisions of the Act to consistency. It was new, but as the revisers said: "It was in conformity with the general understanding upon the subject." Not a word have they to say as to any difference before account filed, or after account filed, about statements, enforced or voluntary distribution. They designed merely to make a more definite and complete enactment of the old law.

Especially do these considerations apply to a case where the account has been filed and distribution awarded before the statutory period of twelve months has elapsed from the granting of letters. We could not have been compelled to file our account until March 1st, 1885. We did, in fact, file our account on May 31st, 1884, in order to accommodate the distributee who now objects to securing us against possible creditors who have twelve months in which to present their claims. In Moorhead's Estate, 1 Chest. Co. Rep., 435, relied on by appellant, a period of over a year had elapsed since the grant of administration. Mr. Justice TRUNKEY, in his elaborate opinion in Jones' Appeal, 3 Out., 124, said: "Whenever the question has arisen in this state it has been ruled that the payment of assets to distributees under the intestate laws without taking security to refund as prescribed by statute, is so contrary to the duty of administrators as to render them personally liable to creditors to the extent of such payments. Their liability under these circumstances is fixed by the plain terms of the statute. The security required is specially for the protection of creditors whose claims are unknown by the administrators; and before they were authorized to take such security there was no mode by which they could distribute to heirs, and relieve themselves of liability to such creditors. It is unnecessary to consider whether the confirmation of the account was an adjudication of the distribution. Conceding that it was, the decree must be interpreted in the light of the statute. There is no conflict, no inconsistency between the statute and the decree. Had the administratrix taken security, approved by the court, her liability would have ceased. She paid without security, and it was at her own risk. It would be absurd to infer from anything in the account and its confirmation, that the court directed the money to be paid without security and in violation of law. If the meaning of the decree were doubt-

[Wetherald v. Shupe.]

ful, which it is not, it should be understood in the sense which is lawful, not that which is wholly outside the power of the court. The decree merely directed the distribution; the law declared the terms upon which the distributees were entitled to receive the money, and the administratrix could pay it without risk."

Independently of express statute the Orphans' Court had discretionary power to order a refunding bond.

The opinion of the court was filed April 6th, 1885.

Per Curiam.—The appellant as trustee of the widow, seeks to recover from the administrator of the decedent within a year after his death, the sum decreed to her, without giving a refunding bond.

The court was right in refusing to make the desired order. A payment although under the decree of distribution at such time, might not protect the administrator: Pry's Appeal, 8 Watts, 253. Within the sphere of its jurisdiction the Orphans' Court has all the power of a court of equity: Culbertson's Appeal, 26 P. F. S., 145. It has undoubted jurisdiction over this fund. The Act of 24th February, 1834, declares no administrator shall be compelled to make distribution of the goods of an intestate until one year has fully expired after the granting of letters of administration on the estate.

Decree affirmed and appeal dismissed at the cost of the appellant.