614 A.2d 284

**Richard D. GALLUCCI and Joanne Gallucci, Appellants,**

**v.**

**PHILLIPS & JACOBS, INC., Appellee.**

Superior Court of Pennsylvania.

Argued May 13, 1992.

Filed Sept. 8, 1992.

Barbara A. Axelrod, Philadelphia, for appellants.

Frederick B. Buck, Philadelphia, for appellee.

Before WIEAND, OLSZEWSKI and KELLY, JJ.

OLSZEWSKI, Judge:

This is an appeal from the judgment of the Philadelphia Court of Common Pleas dated April 22, 1991. Appellants brought this case in 1985 against appellee, Phillips & Jacobs, Inc. [hereinafter "P & J"], Richard Gallucci's former employ-

er. Appellants averred several causes of action surrounding Richard Gallucci's dismissal from employment. Appellants' arguments on appeal deal with causes of action in defamation and malicious prosecution.

The trial court more than adequately summarized the facts in this case.

On October 14, 1983, the plaintiff, Richard D. Gallucci discovered that his employer, Phillips & Jacobs (referred to as "P & J") contacted the Federal Bureau of Investigation (FBI) and arranged an investigation of [him] for industrial espionage. The plaintiff served as a software technician for the Toppan Video Proofer which is specialized equipment designed to enable publishers to view final colored pictures as they would appear in print. In March, 1982, top management personnel assigned to the Toppan project was (sic) either terminated or reassigned including the plaintiff. Subsequent to discussions with management, the plaintiff was reassigned to the sales force.

Mr. Gallucci, began a job search due to the company's lack of success with the Toppan Proofer, and established contact in 1981 with P & J's chief competitor, Hazeltine, for employment. Gallucci received a written offer from Hazeltine on August 26, 1983, after numerous contacts and negotiations with that company.

On October 13, 1983, Gallucci presented the offer to his immediate supervisor at P & J, Bob Kurlich, allegedly in an attempt to grant P & J an opportunity to match the Hazeltine offer. In the afternoon of the same day, the plaintiff met with officers of P & J and two attorneys. At the meeting the plaintiff was accused of industrial espionage. The interrogation by [of] Gallucci was recorded, and the plaintiff, was escorted to his office and asked to leave the company immediately.

P & J contacted the FBI and met with personnel from that office the next day. Documentation including records of telephone calls between Hazeltine and the plaintiff, and records of computer access made by the plaintiff regarding prospective customers of P & J was given to the FBI. As a

result, the FBI began an investigation. A grand jury was convened and a subpoena was issued to obtain Hazeltine's records involving the plaintiff.

Mr. Gallucci mailed a letter to the President of the United States on February 26, 1984 stating that it was his belief the investigation by the FBI had been initiated against him by his former employer, P & J allegedly due to his new employment. On or about May 15, 1984, the plaintiff received a letter from the FBI stating the U.S. Attorney's Office had declined any decision to prosecute him. As a result, the FBI terminated its investigation. On April 17, 1985, a summons was filed on behalf of the plaintiff against P & J. Pursuant to the Freedom of Information Act, the plaintiff requested and received information from the FBI files regarding his case. Upon receipt of this information, a complaint was filed.

Opinion, Gordon J., dated November 4, 1991 at 1–3.

Appellants' complaint contained several causes of action. At issue in this appeal are the causes of action for defamation and malicious prosecution. Appellants have presented a single argument dealing with each issue. First, appellants argue that the trial court erred as a matter of law in refusing to decide whether appellants' defamation claim was barred by the statute of limitations. Appellants argue that the trial court erred by not properly applying the statute of limitations to the defamation cause of action and in submitting the issue of timeliness to the jury. Second, appellants argue that the trial court erred in granting defendant's motion for a compulsory non-suit on malicious prosecution. Appellants argue that the trial court erred in finding that there was not sufficient process to support the cause of action. We take up appellants' arguments below.

Appellants' first argument is that the trial court erred as a matter of law by refusing to decide whether appellants' defamation claim was barred by the statute of limitations. Appellants' argument in this regard is twofold. First, appellants argue that the trial court improperly applied the discovery rule to the defamation cause of action. Second, appellants

argue that the trial court erred in submitting the question of the timeliness of appellants' defamation claim to the jury.

The statute of limitations for defamation is one year. 42 Pa.C.S.A. Section 5523(1) (Supp.1992). Appellants instituted this cause of action on April 17, 1985. The relevant inquiry is therefore whether the statute began to run prior to April 17, 1984. If the statute began to run prior to April 17, 1984, then the one-year period expired prior to appellants' filing suit and appellants' cause of action in defamation is barred.

 In addressing whether the trial court properly applied the discovery rule to the defamation action, we are constrained by certain well-established rules of law. " 'It is well established that an individual asserting a cause of action is required to use due diligence to properly inform himself or herself of the facts and circumstances upon which the claimed right of recovery is based and to institute suit within the applicable statute of limitations.' " *Hunsicker v. Connor*, 318 Pa.Super. 418, 421, 465 A.2d 24, 26 (1983) (quoting *Petri v. Smith*, 307 Pa.Super. 261, 268, 453 A.2d 342, 346 (1982)). " '[M]ere mistake, misunderstanding or lack of knowledge do not toll the running of the statute of limitations.' Although 'we shall surely do equity whenever possible, . . . we may not act in derogation of the express limitations enacted by our legislature.' " *Hunsicker*, 318 Pa.Super. at 423, 465 A.2d at 27 (citation omitted). The discovery rule is an exception to these general rules. Under the discovery rule " . . . the statute of limitations does not begin to run 'until the plaintiff has discovered his injury, or, in the exercise of reasonable diligence, should have discovered his injury.' " *Corbett v. Weisband*, 380 Pa.Super. 292, 309, 551 A.2d 1059, 1068 (1988) (citation omitted). The discovery rule arises out of an " . . . *inability* of the injured, *despite the exercise of due diligence*, to know of the injury or its cause." *Pocono International Raceway v. Pocono Produce*, 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). Considering these rules of law, we are asked to determine whether in this case the trial court properly applied the discovery rule.

Appellants argue that they were prevented from filing their cause of action earlier because they did not discover the cause of action. Appellants' argument is not that they did not know of the injury or cause thereof, rather appellants argue that they did not have access to the information necessary to prepare a proper complaint in defamation. Appellants argue that they did not have information regarding the specific content of the defamatory statements, and that without this information they could not complete a proper complaint.

This argument is without merit. The relevant inquiry is not whether a plaintiff has sufficient information to prepare a complaint, but whether plaintiff knew of the injury and the cause thereof. The evidence clearly reflects that appellants knew of the injury and cause thereof prior to April 17, 1984. N.T. February 6, 1991 at 40–44; N.T. February 7, 1991 at 115–116, 157.

Appellants cite two cases for the proposition that they could not file an action without knowledge of the specific content of the defamatory statements. Brief of appellants at 17–18 (citing *Gross v. United Engineers & Construction,* 224 Pa.Super. 233, 302 A.2d 370 (1973); *Itri v. Lewis,* 281 Pa.Super. 521, 422 A.2d 591 (1980)). We find that the cases cited by appellants do not support the proposition for which they are cited. In *Gross* the court set forth the correct procedure a plaintiff should follow to comply with the statute of limitations and acquire the information necessary to file a complaint.

"... a plaintiff is not excused from pleading the facts necessary to sustain his cause of action on the ground that the facts were known to defendant and not to the plaintiff. The plaintiff still has the burden of filing a complaint which supports his claim, and if he lacks any information necessary to the preparation of his complaint he may obtain discovery:" 2A Anderson Pa.Civil Practice § 1019.8 (1969 Edition), page 85. The proper procedure, therefore, for plaintiff to have followed in obtaining information necessary to the preparation of an adequate complaint was to commence his action by filing a praecipe for a writ. "The action then having been commenced, the plaintiff would be free to

obtain necessary discovery within the scope and subject to the limitation of the rules." 5 Anderson Pa.Civil Practice § 4001.18 (1966 Edition), page 33.

*Gross,* 224 Pa.Super. at 237, 302 A.2d at 372. Appellants here had the same procedure available to them.[1] Further, in *Itri* the court stated the well-settled rule of procedure that a complaint should not be dismissed where there is a reasonable probability that amendment can be successfully completed. *Itri,* 281 Pa.Super. at 523, 422 A.2d at 593. Appellants had two options to avoid the running of the statute of limitations. First, appellants could have followed the preferred procedure by filing a praecipe for a writ and proceeding with discovery before preparing a complaint. Second, appellants could have prepared a complaint and later requested leave to amend.

■ The record in this case clearly supports a finding that appellants knew of their injury and the cause thereof prior to April 17, 1984. The one-year statute of limitations, therefore, expired prior to appellants commencing their action in defamation. The fact that appellants lacked sufficient detail to draft a perfect complaint will not toll the statute. Appellants had the duty to apprise themselves of the necessary facts and pursue legal recourse within the statute of limitations. The procedural rules in this Commonwealth allow a party the means to comply with the statute of limitations while acquiring additional information for a complaint. Appellants failed to avail themselves of these procedures. We cannot now relieve appellants of the period of limitations enacted by the legislature. The trial court properly applied the discovery rule. Appellants' argument is without merit.

1. We note here that appellants to some extent argue that they were unable to acquire the information necessary to compile a complaint because the FBI file was not available. Appellants argue in this regard that under the Freedom of Information Act the FBI file was not available because it was the subject of a current investigation. We find appellants' argument in this regard to be without merit. The file, although a very valuable source of information, was not the only source for information regarding P & J's conduct. P & J clearly had information regarding what information was provided. Further, the file would eventually become available upon the close of the investigation.

Appellants have also argued that the trial court erred by submitting to the jury the issue of whether appellants knew of the claim prior to April 17, 1984. The trial court submitted the following instruction to the jury:

> You must determine, therefore, whether Mr. Gallucci knew or, with the exercise of diligence, should have known before April 18, 1985, that the defendant had provided information to the Federal Bureau of Investigation regarding him.

N.T. February 12, 1990, at 22. Appellants argue that the trial court, not the jury, should have decided this issue. The trial court found that the issue of when appellants knew of the libelous statements was a question of fact for the jury. Generally, "[t]he question of whether a statute of limitations has run on a claim is usually a question of law for the trial judge, but, at times, a factual determination by the jury may be required." *Borough of Aliquippa v. Md. Casualty Co.*, 402 Pa.Super. 569, 575, 587 A.2d 765, 768 (1991) (citation omitted). "The point of time at which the injured party should reasonably be aware that he or she has suffered an injury is generally an issue of fact to be determined by the jury." *Sadtler v. Jackson Cross Co.*, 402 Pa.Super. 492, 501, 587 A.2d 727, 732 (1991). We find that the trial court properly submitted the above interrogatory to the jury. The issue before the trial court was the factual question of when appellants knew or should have known of their injury. This was a proper question for the jury. Appellants' argument is without merit.

Appellants' second argument is whether the trial court erred in granting P & J's motion for a nonsuit on the malicious prosecution cause of action. The trial court granted the nonsuit based upon a finding that there was insufficient process to support a cause of action in malicious prosecution. Appellants argue that the grand jury's issuance of a subpoena for employment records was sufficient process to support a cause of action in malicious prosecution.

The standard of review on appeal of a denial of a motion to remove a nonsuit is well settled. The plaintiff must be allowed the benefit of all favorable evidence and reasonable inferences arising therefrom, and any conflicts in the evidence

must be resolved in favor of plaintiff. *Coatesville Contractors v. Borough of Ridley,* 509 Pa. 553, 558, 506 A.2d 862, 865 (1986). Further, "[i]t has been long settled that a compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established." *Id.* "However where it is clear a cause of action has not been established, a compulsory nonsuit is proper." *Toth v. Economy Office Forms Corp.,* 391 Pa.Super. 383, 386, 571 A.2d 420, 422 (1990). "We must, therefore, review the evidence to determine whether the order entering judgment of compulsory nonsuit was proper." *Coatesville,* 509 Pa. at 559–60, 506 A.2d at 865.

In this case we can narrow our inquiry even further. The trial court granted the nonsuit on a finding that appellant failed to establish sufficient process to support a cause of action for malicious prosecution. The question before us is whether, examining the evidence in a light most favorable to appellant as the party opposing the nonsuit and allowing all reasonable inferences therefrom, there was sufficient process to support a cause of action in malicious prosecution.

 Initially we examine the requirements of a cause of action in malicious prosecution.

A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if

(a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and

(b) the proceedings have terminated in favor of the accused.

*Shelton v. Evans,* 292 Pa.Super. 228, 232, 437 A.2d 18, 20 (1981) (citing Restatement (Second) of Torts Section 653).

Malicious prosecution in Pennsylvania has developed to a large extent based upon the Restatement of Torts (Second) Sections 653 and 654. *See Shelton.* We have reviewed the caselaw in Pennsylvania in an attempt to determine what constitutes sufficient process upon which to base a cause of

action in malicious prosecution. Our review revealed no cases directly answering this question. In this situation, we believe it is appropriate to look to the Restatement to determine what is sufficient to constitute the initiation of criminal proceedings.

 The Restatement (Second) of Torts defines the institution of criminal proceedings in Section 654.

(1) The term "criminal proceedings" includes any proceeding in which a government seeks to prosecute a person for an offense and to impose upon him a penalty of a criminal character.

(2) Criminal proceedings are instituted when

(a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or

(b) without the issuance of process an indictment is returned or an information filed against him; or

(c) he is unlawfully arrested on a criminal charge.

Restatement (Second) of Torts Section 654.

Applying this definition, we find that there was not sufficient process to support a cause of action in malicious prosecution. First, Richard Gallucci was not arrested. Second, no indictment was returned or information filed against Richard Gallucci. Third, no process was issued to bring Richard Gallucci before a body to determine his guilt or to determine whether to hold him for later determination of his guilt. The only process issued in this case was a records subpoena issued by the grand jury. The testimony at trial established without contradiction that the subpoena was issued as a part of the investigation. N.T. February 6, 1990, at 57–58, 74–76. A grand jury is often a body which determines whether to hold a person for later determination of guilt by deciding whether to issue an indictment. In this case, however, this was not the grand jury's function. The grand jury here merely issued a subpoena for records as a part of the investigation. There was no request of the grand jury to decide whether or not to

issue an indictment. If the grand jury had been asked to issue an indictment, then there would have been sufficient process because regardless of whether the indictment was returned against Richard Gallucci the grand jury would have been determining whether to hold him for a later determination of guilt. That is not what occurred in this case.

If we were to find that an investigatory subpoena constituted sufficient process to support a cause of action for malicious prosecution, then each time law enforcement officials began an investigation a cause of action would lie. It would be impossible to determine at what point in the investigation there existed sufficient process. This would lead to an illogical and unworkable result.

The Restatement definition is logical and workable. Criminal proceedings under the Restatement are proceedings in which the government seeks to prosecute and impose a criminal penalty. Restatement (Second) Section 654(1). The Restatement then sets forth a logical framework of steps to determine when criminal proceedings have been instituted. Since appellants have failed to show sufficient process to support a cause of action in malicious prosecution, we find that the nonsuit was appropriate.

Finding no merit to appellants' arguments, we affirm.

Judgment affirmed.