**Robert D. WAYE and B. Joan Waye, d/b/a Medfax–Sentinel, Plaintiffs,**

v.

**FIRST CITIZEN'S NATIONAL BANK d/b/a Citizen's Financial Services, Inc., Defendant.**

No. 3: CV–93–0297.

United States District Court, M.D. Pennsylvania.

Feb. 4, 1994.

Plaintiffs are pro se.

Laurence W. Dague, Glenn R. Davis, Shu-maker Williams P.C., Harrisburg, PA, for defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiffs Robert D. Waye and B. Joan Waye d/b/a Medfax–Sentinel filed this action to recover for alleged improprieties of defendant First Citizen's National Bank d/b/a Citizen's Financial Services, Inc. (First Citizen's or the bank)[1] in the handling of a business checking account which plaintiffs maintained with the bank. Plaintiffs' allegations arise out of the bank's notification, in February, 1991, to federal authorities of suspected check kiting by plaintiff Barbara Joan Waye and the events which preceded and followed that notification.

Plaintiffs allege that the bank contacted federal authorities "to report that they had been defrauded by the Plaintiffs. The defendant reported that Mrs. Waye had used a business account at First Citizen's ... to conduct an elaborate check kiting scheme." (Plaintiff's complaint, para. 1). The bank's charges led to the filing of federal criminal charges against the plaintiff, Barbara Joan Waye, for check kiting.[2]

Plaintiffs allege that this report was false and that the bank's release of financial information to authorities was a violation of the Right to Financial Privacy Act (the Act), 12 U.S.C. §§ 3401–3422.

Plaintiffs allege six instances/types of wrongdoing by the bank in connection with its handling of plaintiffs' business account and matters related to it: 1) Count I alleges negligence and bad faith based on allegedly false reports made to federal banking authorities regarding the status of and transactions linked to plaintiffs' account and Barbara Joan Waye's suspected involvement in a check kiting scheme; 2) Count II alleges the violation of the Financial Privacy Act based on the bank's release of financial records on the Medfax–Sentinel business account to federal authorities; 3) Count III alleges claims of harassment and libel based on a letter sent to the plaintiffs on December 20, 1991 which plaintiffs alleged contained libelous remarks concerning Mrs. Waye; 4) Count IV alleges claims for demanding and receiving usurious interest based on the bank's alleged demand for interest charges of $1,295.40 and defendant's alleged seizure of $967.50 from the plaintiffs' bank accounts; 5) Count V alleges a claim for theft based on defendant's alleged failure to use funds in the amount of $81,-803.85 for the purpose for which plaintiffs intended; and 6) Count VI alleges a claim for punitive damages based on, *inter alia,* defendant's alleged wanton disregard for their rights.

Before the court are: 1) a Rule 12(b)(6) motion filed by defendant to dismiss plaintiffs' complaint for failure to state a cause of action; and 2) a motion to reconsider the court's order dated May 10, 1993 denying plaintiffs' motion for a default judgment. For the reasons stated below, defendant's motion will be granted. All claims will be dismissed with prejudice and without leave to amend. Plaintiffs' motion for reconsideration will be denied.

### PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiff's motion for reconsideration of the May 10, 1993 order was filed May 12, 1993. A motion for reconsideration, if served within ten (10) days of the entry of judgment, is properly characterized as a motion to alter or amend judgment under Fed. R.Civ.P. 59(e). *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990), *cert. denied,* —— U.S. ——, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993); *Vreeken v. Davis,* 718 F.2d 343, 345 (10th Cir. 1983); *A.D. Weiss Lithograph Co., Inc. v. Illinois Adhesive Co.,* 705 F.2d 249, 249–50 (7th Cir.1983); *Taliaferro v. City of Kansas City, Kansas,* 128 F.R.D. 675, 676–77 (D.Kan. 1989). A rule 59(e) motion must rely on at least one of three grounds: 1) intervening change in controlling law, 2) availability of new evidence not previously available, or 3)

---

1. First Citizen's was formerly Star Savings Association and is referred to by that name in some documents referenced herein.

2. Plaintiffs attach an excerpt from a brief filed by the United States in the criminal action, *United States v. Waye,* Crim No. 1:CR–91–200–01, which recounts the history of the criminal proceedings against the plaintiff.

need to correct a clear error of law or prevent manifest injustice.[3] *Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625, 626 (S.D.Miss.1990); *Natural Resources Defense Counsel, Inc. v. U.S.E.P.A.,* 705 F.Supp. 698, 702 (D.D.C.1989), vacated on other grounds upon agreement of the parties, 707 F.Supp. 3 (D.D.C.1989).

■ A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of. *Davis v. Lukhard,* 106 F.R.D. 317, 318 (E.D.Va.1984), vacated on other grounds, 788 F.2d 973 (4th Cir.1986). Nor is it to be used to put forth additional arguments which could have been made but which the party neglected to make before judgment. *Id.* at 318.

Plaintiffs' motion raises no new issues of merit. The court's reasons for denying the motion for default initially are set forth at length in the prior order, and there is no need to revisit those issues. We therefore decline to reconsider plaintiffs' motion for a default judgment.

## DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

### Rule 12(b)(6) standard

■ Under a Rule 12(b)(6) motion, a complaint may not be dismissed for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept all material allegations in the complaint as true and construe them in the light most favorable to the party opposing the motion. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Johnsrud v. Carter,* 620 F.2d 29 (3d. Cir.1980); and *Truhe v. Rupell,* 641 F.Supp. 57, 58 (M.D.Pa. 1985) (Rambo, J.). Although the complaint is to be liberally construed in favor of the plaintiff (See: Fed.R.Civ. 8(f)), the court does not have to accept every allegation it contains as true. Conclusory allegations of law, unsupported conclusions and unwarranted infer-

ences need not be accepted as true. *Conley, supra,* 355 U.S. at 45–46, 78 S.Ct. at 102.

### Claims of negligence and bad faith

■ Count I of plaintiff's complaint asserts a cause of action based on the alleged disclosure of financial records to federal authorities. Although captioned a claim for negligence and bad faith, the claims asserted under Count I fall under the federal Right to Financial Privacy Act. Defendant's reporting of suspected check kiting on the part of plaintiff Barbara Joan Waye does not establish the violation of any legal right of plaintiffs.

Plaintiffs' attempt to state a cause of action for such conduct is thwarted by the plain language of section 3403(c) of the Act, which authorizes such notification and declares financial institutions exempt from claims like those asserted here. Section 3403(c) provides, in relevant part:

> Nothing in this chapter shall preclude any financial institution ... from notifying a Government authority that such institution ... has information which may be relevant to a possible violation of any statute or regulation ... Any financial institution making a disclosure of information pursuant to this subsection, shall not be liable to the customer under any law or regulation of the United States or any constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the customer of such disclosure.

Under the plain language of the section 3403, plaintiffs have no cause of action against First Citizen's for its notification of suspected wrongdoing on the part of plaintiff Barbara Joan Waye.

Moreover, plaintiff's negligence claim fails because no duty is alleged, and none is owed by the bank under the facts, as alleged, and as fleshed out in the numerous documents attached as exhibits to plaintiffs' complaint. Plaintiffs allege that the bank reported to the

---

**3.** "With regard to the third ground, the Court cautions that any litigant considering bringing a motion to reconsider based upon that ground should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625, 626 (S.D.Miss.1990).

Federal Bureau of Investigation that their account was overdrawn by approximately $91,000.00 over a period of time.

While it is never the province of the court to go behind factual allegations of plaintiffs' complaint in ruling on a Rule 12(b)(6) motion, this court is not required to accept plaintiffs' legal conclusions, particularly when the conclusions asserted are directly contrary to plaintiffs' conduct evidenced in documents attached to their complaint. Plaintiffs attach as exhibit "E" to their complaint a copy of a letter dated April 19, 1991 from their attorney at the time, Harry B. Goldberg, Esq., enclosing a check in the amount of $81,803.85 "representing payment of six checks returned to you [a reference to First Citizen's] from First Midwest Bank, the six checks being made payable to Medfax–Sentinel...." (Plaintiff's complaint, exhibit "E"). Attached as exhibit "F" is the response of the bank solicitor, in which he states that: "We appreciate receipt of your check in the amount of $81,803.85 making good the principal amounts of the checks outlined in your letter." (Plaintiff's complaint, exhibit "F"). Attached as exhibit "H" is a letter dated May 29, 1991 from the bank, known at that time as Star Savings and Loan, demanding interest on the $81,803.85 in the amount of $1,295.40. Curiously, plaintiffs also attach to their complaint a letter from First Midwest Bank dated February 26, 1991 which states that the six checks sent to it for collection drawn on the account of Joan Waye, Medfax–Sentinel, of Waverly, New York, are being returned, because: "there are not funds in the accounts to cover the checks."

Plaintiffs do not disclaim the statements in either letter or deny that the transaction occurred, but merely assert legal conclusions based on what they claim occurred instead, i.e. the allegedly false reporting by defendant of the overdrawn status of their account and allegedly false claims of losses sustained by the bank due to returned checks.

■ If plaintiffs had any claim at all under the facts alleged, it would be in the nature of a claim for malicious prosecution based on the alleged false communications to regulatory and law enforcement authorities which resulted in the filing of federal criminal charges against plaintiff Barbara Joan Waye. However, plaintiffs cannot state a claim for such a cause of action at this time, because an essential element is lacking. To establish a claim for malicious prosecution, plaintiffs must allege the conclusion in her favor of criminal proceedings initiated against plaintiff Barbara Joan Waye. Allegation of that element at this time would be impossible. This court takes judicial notice of the fact that the criminal charges filed against Barbara Joan Waye are still pending, and trial on those charges is scheduled to occur some time this Spring.

■ Plaintiffs' claim for bad faith fails as well. No such cause of action exists. "Bad faith" is not a cause of action. In addition, once again, no duty is alleged, and none exists under the facts pled.

Plaintiffs' claims of negligence and bad faith asserted in Count I will, therefore, be dismissed.

### Claims asserted under the Financial Privacy Act

Count II of plaintiffs' complaint asserts a claim under the federal Right to Financial Privacy Act. Plaintiffs allege that the bank improperly provided federal authorities with records pertaining to the Medfax–Sentinel account. Plaintiffs allege that their financial records, consisting specifically of six cancelled checks drawn on the Medfax–Sentinel account, were supplied pursuant to government subpoena. (Plaintiffs' complaint, pp. 3–5 and exhibits "E" and "F"). This was, they allege, a violation of their rights under the Act because they were not provided with a copy of the subpoena.

■ The asserted bases for their claims are sections 3403 and 3405 of the Act. Section 3403(a) establishes a right of privacy in financial records held by a financial institution. It provides, in relevant part:

No financial institution ... may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer ex-

cept in accordance with the provisions of this chapter.

12 U.S.C. § 3403(a).

We reject the bank's argument that the cancelled checks are not financial records within the meaning of the Act. "Financial record" is broadly defined by the Act to include "an original of, a copy of, or information known to have been derived from, any record held by a financial institution pertaining to a customer's relationship with the financial institution." 12 U.S.C. § 3401(2). See generally: *Neece v. Internal Revenue Service,* 922 F.2d 573 (10th Cir.1990).

Release of the financial records by a financial institution is not a violation of any right secured by the Act if done in compliance with an administrative or judicial or grand jury subpoena or a search warrant or a formal written request from a government authority. Section 3402 specifically authorizes disclosures made pursuant to a subpoena or summons. It provides, in relevant part:

> [N]o government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution unless the financial records are reasonably described and—
>
> (4) such financial records are disclosed in response to a judicial subpena which meets the requirements of section 3407 of this title . . .

12 U.S.C. § 3402(4).

■ Plaintiffs' complaint does not indicate whether the subpoena pursuant to which the records were supplied was issued by an administrative agency, a court, or a grand jury. This information is relevant to their claim, since if the records were supplied pursuant to a grand jury subpoena, no prior notice to them was required. Notification of them by the bank was, in fact, expressly forbidden. Section 3420(b)(1) provides, in relevant part:

> No officer, director, partner, employee, or shareholder of, or agent or attorney for, a financial institution shall, directly or indirectly, notify any person named in a grand jury subpoena served on such institution in connection with an investigation relating to a possible—
>
> (A) crime against any financial institution or supervisory agency . . . or
>
> (B) conspiracy to commit such a crime,
>
> about the existence or contents or [sic] such subpoena, or information that has been furnished to the grand jury in response to such subpoena.

12 U.S.C. § 3420(b)(1). See also: *Pleasant v. Lovell,* 876 F.2d 787, 806–07 (10th Cir. 1989).

If, however, the checks were supplied pursuant to an administrative or judicial subpoena, notice was required. 12 U.S.C. §§ 3404 and 3407. Although service was the responsibility of the issuing government authority, not the bank, under the Act, the bank should not have released the records without first receiving a certificate of compliance. 12 U.S.C. § 3403(b).

■ Financial institutions have a duty under the Act to provide the information requested so long as they are provided with proof from the requesting authority that applicable provisions of the Privacy Act have been satisfied. Section 3411 provides:

> Upon receipt of a request for financial records made by a Government authority under section 3405 or 3407 of this title, the financial institution shall, unless otherwise provided by law, proceed to assemble the records requested and must be prepared to deliver the records to the Government authority upon receipt of the certification required under section 3403(b) of this title.

12 U.S.C. § 3411.

Section 3403(b) conditions the release of financial records on the provision of a certificate of compliance. It provides:

> A financial institution shall not release the financial records of a customer until the Government authority seeking such records certifies in writing to the financial institution that it has complied with the applicable provisions of this chapter.

While we cannot determine on the basis of plaintiffs' complaint whether such a certificate was given, that does not preclude us

from ruling on defendant's motion on other grounds.

 Plaintiffs' claims asserted under the Act must be dismissed, because no cause of action exists against the bank for monetary damages for release of the records. Section 3410 governs customer challenges to the requested release of bank records. Paragraph (a) of section 3410 provides that customers have either ten days from the date of service or fourteen days from the date of mailing of a subpoena, summons or formal written request to "file a motion to quash an administrative summons or judicial subpena [sic], or an application to enjoin a Government authority from obtaining financial records pursuant to a formal written request." 12 U.S.C. § 3410(a). The proper recourse is the filing of such an application or motion "stating the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry ... or that there has not been substantial compliance with the provisions of this chapter." 12 U.S.C. § 3410(a)(2). Of course, that remedy cannot be utilized if, as is alleged here, the bank customer did not receive notice of the subpoena when it was issued.

However, the Act makes clear that in such cases, customers nevertheless do not have a civil cause of action against the bank despite the fact that they may have been deprived of the opportunity to contest release of their records due to failure on the part of the government to provide them with a copy of the subpoena. Section 3410(e) provides:

> The challenge procedures of this chapter constitute the sole judicial remedy available to a customer to oppose disclosure of financial records pursuant to this chapter.

 The United States Supreme Court's analysis in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) controls whether a private right of action may be implied under a federal statute if none is expressly created. Under *Cort, supra*, four factors are relevant in determining whether Congress intended to create a private right of action: 1) whether the plaintiff is a member of the class for whose special benefit the statute was enacted; 2) whether there is any

evidence of legislative intent on the question; 3) whether permitting a private right of action would conflict with, or be consistent with, the underlying purposes of the legislative scheme; and 4) whether the cause of action is one traditionally relegated to state law or is basically in an area of concern to the state such that it would be inappropriate to infer a cause of action based solely on federal law.

Here, while it is true that plaintiffs are within the class of persons the Act was intended to protect, i.e. bank customers whose records are subpoenaed, congressional intent not to establish a private cause of action could scarcely be more plain. Section 3410(e) specifically provides that no remedies exist under the Act other than those set forth in that section. Section 3410(a)–(d) confers a limited right to challenge enforcement of a subpoena or formal written request prior to release of the records.

Inferring a cause of action would be directly contrary to the express language of section 3410(e), as well as inconsistent with its underlying dual purposes of protecting financial records from inappropriate disclosure while simultaneously ensuring the government prompt access to such records for investigative purposes. Commenting on the Right to Financial Privacy Act in another context, the United States Supreme Court stated in *Securities and Exchange Commission v. O'Brien*, 467 U.S. 735, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984) that it:

> ... accords customers of banks and similar financial institutions certain rights to be notified of and to challenge in court administrative subpoenas of financial records in the possession of the banks. The most salient feature of the Act is the narrow scope of the entitlement it creates.... [I]t carefully limits the kinds of customers to whom it applies, §§ 3401(4), (5), and the types of records they may seek to protect, § 3401(2). **A customer's ability to challenge a subpoena is cabined by strict procedural requirements....** [H]e must assert his claim within a short period of time, § 3410(a), and cannot appeal an adverse determination until the Government

has completed its investigation; § 3410(d). **Perhaps most importantly, the statute is drafted in a fashion that minimizes the risk that customers' objections to subpoenas will delay or frustrate agency investigations.**

*Id.* at 745, 104 S.Ct. at 2726 (Emphasis supplied.) Permitting a private cause of action against the releasing bank for monetary damages would frustrate these central purposes. Subjecting the releasing bank to monetary damages would place it in the position of policing government conduct to monitor compliance with the notification requirements. Had such a purpose been intended by Congress, it would certainly have been expressly stated in the Act. Cf. 12 U.S.C. § 3410(a)–(d).

Defendant's Rule 12(b)(6) motion to dismiss Count II of plaintiffs' complaint will, therefore, be granted.

### Claims for harassment and libel

Count III of plaintiffs' complaint asserts claims for harassment and libel. Both claims are based on a letter dated December 20, 1991 sent by Chester L. Reed, Office Manager of defendant's Sayre, Pennsylvania branch.[4] Reed's letter was written in response to a letter from Mrs. Waye to the Office of Bank customer Affairs which was forwarded to the Office of Thrift Supervision (OTS). Reed copied in Mark Graham of OTS in his reply letter. Plaintiff[5] claims that two statements made in the letter are defamatory:

> If some writes checks on their own account knowing there are insufficient funds to cover the amount of the checks, then deposits the checks in another account of their own, what would you call this activity? The facts certainly seem to indicate that you were very aware that your deposits at Star Savings and Loan were being made with funds you did not have at your account with First Midwest Bank. I this

is indeed the case, then Webster's definition of fraud would certainly apply to you.

Your letter indicates that the charges against you are 'politically motivated' by Dr. John Thomas. I can only respond, that desperate people, such as yourself, will say and do desperate things. To try and 'blame' Dr. Thomas for your problems is certainly the act of a desperate person. The course of action followed by Star Savings is the one that would have been taken for any account involved in this type of activity. Your relationship with Dr. Thomas has absolutely no bearing on the legal action you are now facing as a result of check kiting.

■■■■ Plaintiff Barbara Joan Waye claims that the reference to fraud and the characterization of her as a "desperate person" are defamatory. Her claims fail for two reasons. The statements made are not defamatory. Second, the letter was not published to anyone outside the privileged circle of communicants. It was addressed to plaintiff herself. Although a copy was mailed to OTS, that communication was privileged and cannot give rise to a cause of action because of the protection afforded the bank for reporting such matters under 12 U.S.C. § 3403(c). The letter was part of a series of communications made to regulatory authorities concerning the suspected illegal activities of plaintiff. Moreover, it was a response to a letter written to plaintiff herself, forwarded to OTS.

■■■ Plaintiff's libel claim is also barred by the statute of limitations. Under Pennsylvania law, claims for libel must be filed within one year of the date the cause of action arises and the plaintiff knows, or reasonably should have known, of the allegedly defamatory communication. *Andrews v. Time, Inc.*, 690 F.Supp. 362, 365 (E.D.Pa. 1988); *Gallucci v. Phillips & Jacobs, Inc.*, 418 Pa.Super. 306, 614 A.2d 284 (1992), *appeal denied*, 533 Pa. 660, 625 A.2d 1193

---

**4.** A copy of the letter is attached to plaintiffs' complaint as exhibit "G1".

**5.** Although plaintiffs do not indicate in their complaint which counts are brought by both plaintiffs and which are brought by only one of the two, certain claims, such as the claim for

libel could potentially exist as to only one of the plaintiffs. Only Barbara Joan Waye could potentially have a claim for libel, since only she is mentioned in Reed's letter, and criminal charges of check kiting were filed against her only.

(1993) and 42 Pa.Cons.Stat.Ann. § 5523.[6] Plaintiff was copied in on defendant's letter dated December 20, 1991. This action was not filed until March 2, 1993, more than one year after the cause of action accrued. In addition to its other short-comings, plaintiff's libel claim is, therefore, also time-barred.

■ Count III also alleges a claim for harassment. No civil cause of action exists for harassment. Plaintiffs allege that the timing of the letter constitutes harassment. They claim that the letter was sent to arrive just before Christmas for the purpose of ruining their holiday. Pennsylvania law recognizes no cause of action based on the timing of sending a letter.

### Claim for usury

Count IV of plaintiff's complaint alleges that defendant demanded a usurious rate of interest from plaintiffs for the use of monies advanced by the bank to cover plaintiffs' outstanding checks, in violation of Pa.Stat. Ann. tit. 41, § 502 (1992). Plaintiffs allege that the bank demanded interest at the rate of 8½%, or a total of $1,295.40, to cover monies advanced by the bank for checks drawn on plaintiffs' business account, and ultimately collected $967.50 via a setoff against other accounts held by Medfax–Sentinel and Joan Waye at the bank. (See: plaintiff's complaint, exhibits "H" through "K").

■ Pennsylvania law sets the maximum lawful rate of interest recoverable for the "loan or use of money in an amount of fifty thousand dollars ($50,000.00) or less in all cases where no express contract shall have been made for a less rate" at six percent *per annum.* A cause of action against the lender demanding a rate in excess of the statutory maximum exists only if the interest was actually paid, not merely demanded without success. Section 502 of the statute provides:

A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges; Provided, That no action to recover such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced within four years from and after the time of such payment. Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges, shall be limited to a four-year period of the contract.

Pa.Stat.Ann. tit. 41, § 502.

Plaintiffs' claim fails because, according to the facts alleged in their complaint, although interest in excess of the six per cent statutory maximum was demanded, it was never collected. Under section 502, a demand alone is not sufficient to confer a private cause of action if interest in excess of the statutory maximum was never collected. See generally: *In re Capital Center Equities,* 137 B.R. 600 (E.D.Pa.1992).

■ Further, the section 201 statutory maximum is clearly not applicable to plaintiff's claim. Plaintiffs bring this action as Robert and B. Joan Waye d/b/a Medfax–Sentinel. Their claim for usury is asserted through, and on behalf of, Medfax. The Pennsylvania usury statute does not apply to businesses. Pa.Stat.Ann. tit. 41, § 301(f)(v).[7] "[L]imitations on the rate of interest charged to borrowers in business loans do not exist under Pennsylvania law." *In re Capital Center Equities,* 137 B.R. 600, 613 (E.D.Pa. 1992).

The fact that the letter requesting the interest was addressed to Joan Waye is of no

---

6. Section 5523 provides, in relevant part:
 The following actions and proceedings must be commenced within one year:
 (1) An action for libel, slander, or invasion or privacy ...
 42 Pa.Cons.Stat.Ann. § 5523.

7. Section 301(f)(v) provides, in relevant part:
 The maximum lawful rate of interest set forth in this section ... shall not apply to ... (v)
 Pa.Stat.Ann. tit. 41, § 301(f)(v).

consequence.[8] It is the business on behalf of which plaintiffs invoke the claim of usury and a business account in connection with which the interest was requested. *Smith v. Mitchell,* 420 Pa.Super. 137, 616 A.2d 17 (1992). Defendant's motion to dismiss Count IV will, therefore, be granted.

### Claim for theft

Count V of plaintiff's complaint alleges a claim for theft based on defendant's alleged conversion of monies remitted by plaintiffs to correct an overdraft to its own use. Plaintiffs allege that on April 19, 1991, through their then counsel, Harry B. Goldberg, Esq., they sent defendant a check in the amount of $81,803.85 "to be deposited into their business account ... to cover an alleged overdraft which Defendant had informed government agencies existed on Plaintiffs' business account as a result of six returned deposit items." (Plaintiffs' complaint, pp. 6–7). Plaintiffs allege that defendants "failed to deposit the Plaintiffs' money ... into the Plaintiffs' business account ... but instead, used the Plaintiffs' money ... for the Defendant's own benefit." (Plaintiffs' complaint, p. 7)

Under Pennsylvania law, there is no statutory or common law cause of action for theft. "Theft" refers to criminal conduct governed by statutory law found at 18 Pa. Cons.Stat.Ann., Chap. 39.

Plaintiffs' allegations could, however, be construed as an attempt to allege a claim for conversion and we will consider its potential merit as such. The exhibits attached to plaintiffs' complaint belie plaintiffs' claim that the bank wrongfully converted funds sent to it by Goldberg. The chain of correspondence between the bank and Goldberg makes it clear that the $81,803.85 was for, and was remitted to the bank for, that purpose. In his letter of April 19, 1991 to Chester L. Reed at First Citizen's, which is referenced in plaintiff's complaint on page 7, Goldberg states:

Enclosed please find check in the amount of $81,803.85, representing payment of six checks returned to you from First Midwest Bank; the six checks being made payable to Medfax–Sentinel ...

(Plaintiffs' complaint, exhibit "E"). See also: (Goldberg's follow-up letter dated April 26, 1991, attached to plaintiffs' complaint as exhibit "F"). The check itself (attached to plaintiffs' complaint as exhibit "N.2") negates any suggestion that the bank converted funds belonging to the plaintiff. The check is made payable to Star Savings and Loan (defendant's predecessor bank). The funds it represents were the bank's, not plaintiffs', making it impossible for plaintiffs to establish any claim for conversion of their funds.

Count V of plaintiffs' complaint will, therefore, be dismissed.

### Claim for punitive damages

Count VI purports to state a claim for punitive damages based on defendant's alleged "outrageous, vindictive, willful, malicious, and so extreme and careless [conduct] as to indicate a wanton disregard for the rights of the plaintiffs". No facts are alleged in support any of these legal conclusions.

Punitive damages "are awarded to deter outrageous and malicious conduct and to deter a wrongdoer from engaging in similar conduct in the future." *Garden State Tire Realty Corp. v. R.K.R. Hess Associates, Inc.,* 762 F.Supp. 92, 93 (M.D.Pa.1990). To justify an award of punitive damages, there must be proof of acts "done with bad motive or with reckless indifference to the interest of another.... [T]he plaintiff must show wilful, intentional and malicious conduct on the part of the defendant." *Id.,* citing *Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co.,* 607 F.Supp. 361 (E.D.Pa.1985) and *Allstate Insurance Company v. A.M. Pugh Associates, Inc.,* 604 F.Supp. 85 (M.D.Pa.1984). See also: *Restatement of Torts (Second),* § 908.

"Punitive damages may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." *McDaniel v. Merck,*

---

**8.** See: plaintiffs' complaint, exhibit "H", letter from Terry B. Osborne, President of Star Savings and Loan Association dated May 29, 1991.

*Sharp & Dohme,* 367 Pa.Super. 600, 533 A.2d 436 (1987), citing *Martin. v. Johns–Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985) (per Hutchinson, J. with one justice concurring and four justices concurring in the result).

Additionally, punitive damages are recoverable only under a tort-based cause of action. Such damages are not recoverable under a contract-based cause of action. *White v. Moses Taylor Hospital,* 763 F.Supp. 776 (M.D.Pa.1991) and *Tudor Development Group, Inc. v. United States Fidelity & Guaranty Co.,* 692 F.Supp. 461, 466 (M.D.Pa. 1988).

Nothing alleged by plaintiffs can sustain a claim for punitive damages. Nothing is even alleged to substantiate the claim that defendant acted willfully, maliciously, or outrageously.

Further, there are no substantive claims remaining. Punitive damages are an element of damages, not an independent cause of action, and as such, cannot stand alone. If the cause of action for compensatory damages to which they are linked is dismissed, the punitive damage claim must be dismissed as well. *White v. Moses Taylor Hospital,* 763 F.Supp. 776 (M.D.Pa.1991); *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 802 (1989) and *Rhoads v. Heberling,* 306 Pa.Super. 35, 451 A.2d 1378, 1383 (1982).

Plaintiffs' claim for punitive damages will, therefore, be dismissed.

### Leave to amend denied

Plaintiffs will not be granted leave to amend. Granting leave to amend would be futile since under the facts pled, there is no possibility plaintiffs can allege a viable cause of action.

### ORDER

·For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. Defendant's Rule 12(b)(6) motion (record document no. 18) is granted.

2. Plaintiffs' complaint is dismissed, as to all counts, with prejudice.

3. Plaintiff's motion to reconsider the court's order dated May 10, 1993 denying plaintiff's motion for a default judgment is denied.

4. The clerk of court is directed to close the file.