## Vought Estate.

Argued November 10, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Paul E. C. Fike,* with him *Joseph N. Cascio* and *Fike & Cascio,* for appellants.

*Frank S. Lucente,* for appellee.

OPINION BY HIRT, J., March 16, 1954:

The factual background of this proceeding discloses a contest between Potter Lumber Company, a partnership composed of A. J. and Harold M. Potter, and Fayette Hardwood Lumber Company, to secure a valuable timber tract by purchase. The controversy revolves around the sale of the interests of six minor children.

John Vought, the owner of 330 acres of land in Black Township, Somerset County, died intestate on December 17, 1927. Title to the farm vested in his nine children. One of these children, Harry Vought, died intestate on May 9, 1948 survived by his widow Grace Vought, and nine children, six of whom are still minors. The Potters, after extended negotiations with the Vought heirs, offered $19,000 for all of the timber on the land measuring *14 inches* in diameter and upwards, *two feet* from the ground. After consultation among the heirs the offer was orally accepted. But before a written agreement could be made available for execution, Fayette Hardwood Lumber Company, on hearing of the transaction, offered to pay $24,000 for all of the timber *seven inches* or more across the stump, *twelve inches* above the ground. The testimony is that the "prop timber" between seven and fourteen inches in diameter was worth $5,000. Accordingly the offer

in reality was on the same basis as the prior offer of $19,000. The Potters agreed to meet the offer of $24,-000, for all of the timber on the changed specifications and two weeks later on May 20, 1952, a written agreement was prepared providing for the sale of all timber, seven inches in diameter one foot above ground to the Potter Lumber Company for $24,000. Eight of the Vought heirs, who were sui juris, signed the agreement and were joined in its execution by their respective spouses. Grace Vought signed in her interest as widow of Harry Vought, and the three adult children of Harry Vought with their spouses also signed the agreement. Grace Vought also executed the contract of sale as "mother and natural guardian of the six minor children of Harry Vought." All of the parties understood that approval by the Orphans' Court was necessary to the consummation of the sale of the minors' interests in the timber. The executed agreement was retained by the attorney representing the Voughts, and a check for the full amount of the purchase price was deposited by the Potters with their attorney to be paid on delivery of the agreement after court approval of the sale of the minors' interests. Upon signing the agreement Grace Vought as natural guardian of the above minor children also executed a petition addressed to the Orphans' Court praying for approval of the sale of their interests in accordance with the agreement of May 20, 1952, entered into on their behalf.

There is some vague reference in this record to a subsequent bid of $28,000 for the timber made by the Fayette Company, but only in the testimony of one of the Potters, and in the cross-examination of the Voughts' attorney. But there is no evidence of the specifications on which it was based, nor in fact that any bona fide offer at that figure was actually made by the Fayette Company. The alleged offer was not

a fact for consideration by the court when the petitions which raised the present controversy were before it for approval, and it is not a factor in this appeal.

About the time of its execution on May 20, 1952 the petition of the natural guardian of Harry Vought's minor children was presented to the court by the Voughts' attorney and the court after some discussion indicated, in the presence of Grace Vought that her joinder as guardian in the sale to the Potters would be authorized. The court however held the matter in abeyance. On June 2, 1952, Grace Vought again appeared in the Orphans' Court not with counsel who had previously represented her, but with the Fayette Company's counsel. That company had offered $5,400 for the entire undivided 1/9 interest of the Harry Vought heirs *in the land* including all timber but excepting coal and other mineral and mining rights. Grace Vought then stated to the court that she had changed her mind since she had petitioned the court for the sale of the minors' interest in the timber to the Potters, and that she then desired to accept the offer for her minor children's interests which was included in the $5,400 offered for the entire 1/9 interest of the Harry Vought heirs in the tract. The Orphans' Court recognized that a fiduciary may repudiate an agreement in the best interest of its ward and on that ground, by order entered on June 9, 1952, formally approved the second petition of Grace Vought as natural guardian of her minor children for the sale of their interest in the land to the Fayette Company. On the same day Grace Vought in her own right and as natural guardian of her minor children, by deed, conveyed their entire interest in the land to the Fayette Hardwood Lumber Company, excepting the mineral and mining rights above referred to. Thereupon $3,800 was deposited by the Fayette Company with its attorney for delivery to Grace Vought upon receipt of release

of liens of record against her. The deed was recorded on June 11, 1952 and on that date the Potters petitioned the court to vacate the order of June 9, or to modify it by excepting therefrom the timber contemplated by their agreement of May 20, 1952. After argument, the court on May 25, 1953 opened its decree of June 9, 1952 and set down the whole matter for full consideration. After extended hearings and final argument the court on September 12, 1953 vacated the decree of June 9, 1952, and directed a refund to the Fayette Company of the purchase price paid by it for the interests of Grace Vought and her minor children. The above deed also was annulled. In addition, the prayer of the original petition of Grace Vought for authority to sell her minor children's interest in the timber to the Potters pursuant to the agreement of May 20, 1952 was granted, and the County Trust Company of Somerset was appointed guardian of the six minor children of Grace Vought, to give effect to the order and to represent them generally in place of their mother as their natural guardian.

Within the limited sphere of its jurisdiction the Orphans' Court has all the powers of a court of equity. *Simpson's Appeal*, 109 Pa. 383, 389. The Orphans' Court "is a court of equity powers, and in all matters within its jurisdiction has as full authority to grant relief as any chancellor ever had": *Johnson's Appeal*, 114 Pa. 132, 139, 6 A. 556. *Johnson's Appeal* is the leading case on the authority of the court to correct its former adjudications if in them it discovers "a palpable mistake, produced by its own inadvertence or by the blunder of the parties" or by fraud. The principle was applied in *McCaffrey v. Gibney*, 223 Pa. 368, 72 A. 632 and *Ehrhart's Estate*, 31 Pa. Superior Ct. 120. Cf. *Huff's Estate*, 299 Pa. 200, 207, 149 A. 179; *Bower's Appeal*, 84 Pa. 311.

As to what occurred on May 20, 1952 when the petition of Grace Vought for approval of the sale of the minors' interests to the Potters was presented, the opinion of the court recites: "We then indicated the petition would be granted and the joinder authorized. However, as a convenience to Paul E. C. Fike, Esq., counsel for the Fayette Hardwood Lumber Company, the matter was held in abeyance." From what occurred the inference is reasonable that the court postponed action on the petition to give the Fayette Company an opportunity to offer more for the minors' interests. The court is not chargeable with error in so doing. But when the Fayette Company secured court approval of its offer not only for the timber but for an interest in the fee, without notice to the Potters who were the beneficiaries of the prior petition then before the court, legal fraud resulted which on later consideration justified the court in setting aside its decree for the sale of the minors' interests to the Fayette Company.

A binding agreement for the sale of standing timber in law is the conveyance of an interest in land. *Havens et al. v. Pearson*, 334 Pa. 570, 6 A. 2d 84. But there is error in the holding of the court in this case that "By the agreement of May 20, 1952 the Potters became the owners of the equitable estate and title to the specific interest in this real estate as therein contained." This conclusion was right on the principle of *Butler County Commrs.' Petition*, 141 Pa. Superior Ct. 597, 15 A. 2d 504, as to the eight adult Vought heirs who entered into the agreement. And they therefore were proper parties in interest in the present proceeding before the lower court. But although a court may authorize a parent as natural guardian to convey a minor's interest in real estate under the Act of April 18, 1949, P. L. 512, §§1001, 1002, 20 PS §§320.1001, 320.1002, a mother without such order, has no authority by rea-

son of her natural guardianship to sell an interest in land owned by her minor child. Cf. *Brill v. Brill,* 282 Pa. 276, 127 A. 840. For want of approval of the first petition of Grace Vought for the sale of her minor children's interest no equitable or other estate vested in the Potters for the minors' interests in the timber under the agreement of May 20, 1952.

The opinion of the lower court states: "At the time of entering the formal order this court did not fully understand and realize that the [Fayette Company's] offer of fifty-four hundred dollars for the Harry Vought one-ninth interest in the tract was not identical with the Potter offer on the basis of twenty-four thousand for the timber." If it was not brought to the attention of the court that the offer of the Fayette Company contemplated a conveyance of the surface in addition to the timber, that in itself was good reason in law for the court's action in revoking its decree authorizing the sale. *Huff's Estate,* supra. Under the circumstances approval of the offer because of a misapprehension as to its scope obviously called for equitable relief. The Fayette Company was not a bona fide purchaser without notice of the prior equitable transfer of title to the timber by the adult Vought heirs in the agreement with the Potter Company. Moreover the increased consideration to be paid for an interest in the minors' land as well as the timber, cannot convict the lower court of error in making the order. What is in the best interests of minor children is not always determined by the amount of money involved. A decision on that question involves a consideration of the interests of others affected, as well as all other circumstances. We may take it that $24,000 is the actual value of the timber referred to in the sales agreement of May 20, 1952 for the Fayette Company had put that valuation on it. The Fayette Company well might have

made a higher bid for the minors' interests in the subject matter of the Potters' contract, to-wit: the timber on the Vought land, but did not. It would have been most inequitable to compel the Voughts to protect the value of their timber by defending a partition of their farm in a proceeding based upon the conveyance of the minors' interest by the deed to the Fayette Company which has been set aside. The adult Vought heirs were legally bound by their sales contract of May 20, 1952, to deliver their interest in the timber to the Potters. The effect of the approval of the petition for the sale of the minors' interests in the land including the timber was to stand in the way of a total sale of the timber to anyone except on terms agreed to by the Fayette Company. As a device aimed at accomplishing that result the offer which the court in the first instance approved amounted to fraud in law which clearly justified the decree which is the subject of this appeal.

Decree affirmed at the costs of appellants.