437 Pa. Superior Ct. 372 (1994)
650 A.2d 73
In re ESTATE OF John Francis BRAUN, Deceased.
Appeal of Maurine BRAUN.
Superior Court of Pennsylvania.
Argued June 15, 1994.
Filed November 14, 1994.
*374 Robert Modrak, Washington, for appellant.
Lucinda A. Bush, Washington, for Barnhill, participating party.
Before KELLY, FORD ELLIOTT and BROSKY, JJ.
BROSKY, Judge.
This is an appeal from the final order of the Orphans' court denying appellant's petition to discharge a lien on her real property and directing her to pay appellee the sum of $4,534.32.
Appellant presents the following issues for review: (1) whether the trial court erred in applying the interest rate set forth in a prior court order and decree, which provided for the payment of interest at a rate in excess of the maximum statutory rate; (2) whether an individual can waive application of the usury law by agreeing to an interest rate in excess of that provided by the statute; (3) whether the trial court erred in calculating the amount owed to appellee by providing for compound rather than simple interest; and (4) whether the trial court erred in computing the amount owed to appellee by permitting appellee to recover interest on the debt after the date on which appellant tendered a lesser sum in compromise of the parties' dispute. For the reasons set forth below, we affirm.
Before proceeding to address appellant's allegations of error, it is necessary to recount the relevant facts giving rise to this appeal. John Braun died testate on April 9, 1973. Mr. Braun's will directed his executor to pay his just debts and funeral expenses from assets of the estate. The will further devised the remainder of the estate to the decedent's wife, *375 Maurine Braun, who is the appellant herein. Mr. Braun's estate consisted solely of a tract of realty which was valued in 1973 at $10,500.
The decedent's funeral expenses amounted to $1,316.00. When full payment was not made, appellee, Stewart Barnhill/Stewart Barnhill Funeral Home, filed a claim against the estate which was identified in the executor's account. Due to the illiquidity of the estate, the executor was unable to satisfy the claim absent a sale of the decedent's only asset. To avoid this result and preserve the land for the decedent's widow, the parties agreed that appellee's claim would become a charge against the realty. Accordingly, an adjudication and decree of distribution, dated July 1, 1975 as well as a separate order, dated June 20, 1975, were entered creating a lien on the property for the balance owed to appellee together with interest at a rate of eight percent (8%) per annum. The June order further provided for payment in the sum of $50.00 per month until the principal and interest accruing on the unpaid balance were paid in full. Following entry of the June order and final decree, appellant made four monthly payments in the sum of $50.00 upon the debt.[1] Appellant made no further payments after October, 1975. Appellant likewise did not seek review of either the June order or the final adjudication and decree within the time period prescribed by law. The charge against the property was subsequently recorded and indexed as a lien on the estate in September, 1977.
Appellant sold her property in March, 1992 at which time she tendered the sum of $2,574.24 in compromise of the debt owed to appellee. Appellee refused to accept appellant's offer of partial payment. As the parties were unable to settle their dispute, appellant filed a petition in October, 1993 requesting *376 that the court compute the amount of the debt from July, 1975 using a rate of 6% simple interest and directing that the lien be discharged upon payment. By order entered on November 30, 1993 the trial court determined that appellant owed appellee the sum of $4,534.32 as of November 23, 1993 and provided that the lien would be discharged upon payment. Appellant thereafter appealed from the entry of this order.
As a preliminary matter, we note that appellant has failed to apprise us of the applicable scope and standard of review as mandated by Pa.R.A.P., 3518(a), 42 Pa.C.S.A.[2] Appellee likewise has not supplied us with the standard and scope of review. Our independent research of this matter has disclosed the appropriate standard, which has been explicated by our Supreme Court as follows:
The standard of review of a decision of the Orphans' Court is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. . . . [Moreover, the] chancellor, sitting as the trier of fact and viewing the witness[es] ha[s] the best opportunity to judge the credibility of and the weight to be assigned to th[e] testimony, and h[is] findings cannot be disturbed absent an abuse of discretion. Thus, while the [petitioner's] burden of proof is one of law, the reviewing court cannot reverse the chancellor's findings based merely upon its conclusion as to the weight to be given to . . . [the] testimony, for that is within the sole province of the trier of fact.
In re: Estate of Cornell, 511 Pa. 475, 479-480, 515 A.2d 555, 557 (1986) (citations and quotation marks omitted). Accord Estate of Getz, 421 Pa.Super. 513, 520, 618 A.2d 456, 459 (1992); In re: Benson, 419 Pa.Super. 582, 585, 615 A.2d 792, 793 (1992). While our review of the Orphans' Court findings *377 of fact is limited to considering whether they are supported by the record, we are not so restricted in reviewing the legal conclusions derived therefrom. Estate of Getz, supra. We will evaluate the decision of the Orphans' Court in accordance with these considerations.
Appellant's first and second questions both concern the chancellor's decision to uphold the interest rate of eight percent (8%), as set forth in the 1975 order and decree. Because these issues are interrelated they will be addressed together. With respect to these matters, appellee contends that appellant is precluded from challenging the provisions of the 1975 order and decree and the interest rate specified therein pursuant to the provisions of the Probate, Estates and Fiduciaries Code ("PEF Code"), 20 Pa.C.S.A. § 3521 and res judicata principles. Appellant, however, responds that appellee has waived this claim because appellee failed to raise it in the lower court proceedings. Although appellee neither recited the words "res judicata" nor referenced the PEF Code, he asserted that the prior order and decree affixing the interest rate were final and that appellant's claims were waived by her failure to appeal therefrom. See Creditor's Brief in Opposition to Petition to Discharge Property from Lien, filed 11/22/93, at 2. This argument sufficiently apprised the lower court that appellant's attempt to challenge the prior order and decree was precluded by the finality principles which underlie both the PEF Code and the doctrine of res judicata. Appellee thus adequately preserved this matter for review. See, e.g., American Association of Meat Processors v. Casualty Reciprocal Exchange, 527 Pa. 59, 67, 588 A.2d 491, 495 (1991) (affirmative defense of illegality was not waived even though it was raised for the first time in post-trial motions).
Our Supreme Court has recognized that an order confirming an account and ordering distribution of an estate becomes final when no appeal is timely filed therefrom. In re: Estate of Litostansky, 499 Pa. 321, 323, 453 A.2d 329, 330 (1982). The failure to appeal from a final order renders the doctrine of res judicata applicable. Id. Nevertheless, the PEF Code permits a beneficiary to file a petition to review *378 any adjudication or decree of distribution within five years after the final confirmation of the account. 20 Pa.C.S.A. § 3521.
Although the order and decree of distribution were entered in 1975, appellant did not file a petition challenging the interest rate set forth in the 1975 documents until 1993, well outside of the five year period prescribed by Section 3521. Review of the 1975 order and decree is thus statutorily precluded unless appellant can establish fraud. Estate of Thomas, 495 Pa. 93, 97, 432 A.2d 968, 969 (1981); In re Estate of Doerr, 388 Pa.Super. 474, 482, 565 A.2d 1207, 1211 (1989).
To warrant review of a distribution decree, the fraud alleged or proved must . . . appear to have induced the distribution decree itself, or in the alternative, to have deterred an interested party from seeking review of the decree within the five year period permitted by the statute. A cause of action arising from fraud is complete when the transaction has ended; the statute of limitations begins to run at once, unless discovery is prevented by active concealment. The party claiming fraud and seeking review is charged not only with . . . what he actually knew at the time, but also with what he should have known through the exercise of reasonable diligence. Thus, in order to justify reconsideration of a distribution decree after the statute has run, a party must prove an intrinsic fraud which has prevented precisely one's exercise of the limited right of review which the statute grants.
In re Estate of Doerr, 388 Pa.Super. at 483, 565 A.2d at 1211 (citations and quotation marks omitted). Accord Estate of Thomas, 495 Pa. at 97, 432 A.2d at 970. Appellant has neither alleged nor proved intrinsic fraud sufficient to justify reopening of the 1975 order and decree of distribution. Under these circumstances, principles of finality preclude appellant from challenging the 1975 order and decree. Estate of Thomas, supra; In re: Estate of Doerr, supra; 20 Pa.C.S.A. § 3521.
Even were we to permit appellant to collaterally attack the interest rate established in the 1975 orders and decree, she would not be entitled to any relief. In support of her argument *379 that the interest rate in the order and decree is usurious, appellant refers us to the provisions of the Loan Interest and Protection Law ("LIPL"), 41 P.S. § 101-§ 605 and the Judicial Code, 42 Pa.C.S.A. § 8101. The LIPL was designed to protect the citizenry of this Commonwealth from being exploited at the hands of unscrupulous individuals seeking to circumvent the law at the expense of unsuspecting borrowers who may have no other avenue to secure financial backing. Smith v. Mitchell, 420 Pa.Super. 137, 143, 616 A.2d 17, 20 (1992). By its own terms, the LIPL only governs transactions relating to the loan or use of money. 41 P.S. § 201 (fixing the maximum lawful rate of interest for the loan or use of money). See also 20 P.L.E. § 22 (1990) (usury contemplates the existence of a loan; when there is no loan, usury cannot arise), citing Seltzer v. Sokoloff, 302 Pa. 449, 451, 153 A. 724, 724 (1931) (usury arises between borrower and lender). The LIPL does not apply to a bona fide sale of goods on credit. Equipment Finance, Inc. v. Grannas, 207 Pa.Super. 363, 366, 218 A.2d 81, 82 (1966).
As applied here, the record reveals that appellant's financial obligation arose out of appellee's provision of funeral-related goods and services to appellant's decedent, which was presumably done at the behest of appellant. This transaction necessarily included provision of the decedent's casket and embalming services, as well as other associated burial materials, services and costs, such as rental of the funeral home for viewing of the decedent, rental of the funeral hearse or other costs of interment, in exchange for a monetary sum. The decedent's funeral bill thus became a just debt of the estate which had to be satisfied before the decedent's assets could be transferred to appellant, who was the sole beneficiary of her husband's estate. See Wright v. Allstate Insurance Co., 271 Pa.Super. 559, 562, 414 A.2d 395, 396 (1979) (funeral expenses are a charge which the law imposes upon the estate of the decedent); 20 Pa.C.S.A. § 3392 (providing that costs of the decedent's burial and funeral are to be paid prior to distribution of assets); Last Will and Testament of John Braun *380 (directing executor to pay the just debts and funeral expenses out of the estate assets).
When full payment was not made, appellee filed a claim against the estate as is permitted under the PEF Code, 20 Pa.C.S.A. § 3384. However, the decedent's estate was only comprised of a tract of land valued at $10,500. Due to the illiquidity of the estate, the executor was required to either sell the assets to satisfy this claim or enter into a compromise to ensure payment of the debt without a sale of the realty that would deprive the widow of possession of her home. Matter of Estate of Barilla, 369 Pa.Super. 213, 223, 535 A.2d 125, 130 (1987) (in the event that a decedent's assets are insufficient to satisfy the claims of creditors, Pennsylvania law provides that the administrator may acquire control over the real property and the income derived from it to satisfy the creditors' claims); Hodge v. Cameron, 132 Pa.Super. 1, 11, 200 A. 238, 243 (1938) (the duty of the executor is primarily one of payment, that is, of auditing and paying the expenses of burial and of conserving and distributing the assets of the estate to those who are legally entitled thereto).
The executor properly effectuated the intent of the decedent by choosing the latter course of action. As a result, the parties entered into an agreement which benefitted appellant by permitting her to receive and retain her property, subject to a lien of charge, in exchange for her payment of the decedent's funeral costs. This agreement was subsequently approved by the Orphans' Court and was incorporated into the order and decree of distribution. After reviewing the events giving rise to appellant's obligation, we do not believe that the transaction falls within the scope of matters which the LIPL was designed to regulate as it involved the bona fide purchase of and payment for funerary goods and services, which became a just debt of the estate, rather than an agreement for the loan or use of money.
Appellant also contends that the order and decree of distribution constituted a judgment which can only bear interest at the maximum statutory rate pursuant to 42 Pa.C.S.A. *381 § 8101 (providing that a judgment for a specific sum of money shall bear interest at the lawful rate) and 41 P.S. § 202 (reference in any law or document to the legal rate of interest without specification of the applicable rate must be construed to refer to the rate of interest of six percent per annum). Our Supreme Court has recognized that a decree of distribution is like a judgment, and thus, interest thereon is incidental thereto. See Koleff Estate, 346 Pa. 478, 479, 31 A.2d 121, 121 (1943). With respect to the rate of interest, however, this court has observed:
A review of the case law reveals that the trend of the courts has been to take an equitable approach in determining interest as an element of damages. The Pennsylvania courts have also adopted this approach, and in equity cases, the award and rate of interest allowed is at the discretion of the chancellor. . . . An examination of the cases dealing with the charge and allowance of interest will disclose many difficulties, but the decided trend of courts of law and courts of equity has been to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case. Unless a case be found, which is a conclusive precedent, the safest and at the same time the fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing.
Smith v. Mitchell, 420 Pa.Super. at 144-145, 616 A.2d at 21 (citations and emphasis omitted). Moreover, the courts of this Commonwealth have found that the parties may agree to a post-judgment interest rate in excess of that provided by statute. See, e.g., Miller v. City of Reading, 369 Pa. 471, 473-474, 87 A.2d 223, 226 (1952) (party who illegally fails to pay a debt is liable to pay interest thereon at the statutory rate unless the parties expressly agree otherwise); Smith v. Mitchell, 420 Pa.Super. at 144, 616 A.2d at 21 (quoting Daset Mining Corp. v. Industrial Fuels Corp., 326 Pa.Super. 14, 36, 473 A.2d 584, 595 (1984) and recognizing that in contracts *382 concerning the payment of the sum of money at a rate higher or lower than the legal rate, they can agree to have the agreed upon interest rate continue after the debt becomes due; in the absence of an agreement, the interest rate fixed by law attaches); Cumberland Valley Cooperative Association v. Martin, 11 D. & C.4th 10, 12 (C.C.P. Cumberland County 1991) (specific intent of the parties prevails over the statutory rate; parties' agreement to pay post-judgment interest rate of 15% was upheld); Tierney v. Seidman, 19 Philadelphia County Reporter 267, 277 (1989) (legal rate of interest does not apply post-judgment where the agreement between the parties specifies a higher rate of 14.6%); Sicari v. Barua, 43 D. & C.3d 647, 649 (C.C.P. Somerset County 1986) (enforcing parties' agreement to pay post-judgment interest rate of 16.5%).
As we previously explained, appellee accommodated appellant and the executor of the decedent's estate by accepting a lien on appellant's land and a monthly repayment of the decedent's funeral expenses in lieu of full and immediate satisfaction by virtue of a sale of the decedent's assets. The terms of the parties' agreement were approved by the court and are reflected in the order and decree of distribution. See Order of June 20, 1975 and Adjudication and Decree of July 1, 1975. Pursuant to the agreement, appellant was obligated to pay the decedent's funeral costs of $1,316.00 plus interest at a rate of 8% per annum. Order of June 20, 1975 and Adjudication and Decree of July 1, 1975. Appellant further agreed to repay the principal balance and accrued interest in the sum of $50.00 per month until the debt was fully paid. Order of June 20, 1975. The record thus reflects that the parties expressly contracted for a post-judgment rate of interest in excess of the statutory rate, as they were permitted to do. Miller v. City of Reading, Smith v. Mitchell, Daset Mining Corp. v. Industrial Fuels Corp., Cumberland Valley Cooperative Association v. Martin, Tierney v. Seidman, and Sicari v. Barua, supra.
Appellant cannot now be heard to complain that the agreement was unfair, unjust or unknowing because of any lack of *383 legal representation or sophistication. See O'Neill v. Checker Motors Corp., 389 Pa.Super. 430, 434, 567 A.2d 680, 682 (1989) (any layperson choosing to represent herself in a legal proceeding must, to some reasonable extent, assume the risk that her lack of expertise and legal training will prove her undoing). If appellant had concerns regarding the terms of the agreement, there is no evidence that she was prevented from consulting with legal counsel. In the alternative, appellant could have apprised the court of any inequities in the proposal, as appellant was afforded the opportunity to speak with the court at the audit hearing. See N.T. 6/20/75 at 2-3. Although appellant was technically unrepresented, the record reveals that the executor of the estate, who was an attorney, fulfilled his duties to both appellant and the estate by facilitating an agreement between the parties which enabled appellant to retain her property. The agreement thus inured to appellant's benefit, as the executor otherwise would have been required to sell the estate assets to satisfy the decedent's just debts. Matter of Estate of Barilla, supra.
We further note that the Orphans' Court is a court of equity powers, and in all matters within its jurisdiction, has full authority to grant relief as any chancellor. Webb Estate, 391 Pa. 584, 586, 138 A.2d 435, 436 (1958); Vought Estate, 175 Pa.Super. 173, 178, 103 A.2d 445, 448 (1954), allocatur denied. It is within the discretion of the Orphans' Court to ascertain the reasonableness of the decedent's funeral costs and expenses, in accordance with equitable principles, so that justice could be accomplished. Webb Estate, supra; Smith v. Mitchell, supra; Vought Estate, supra; Ennis' Estate, 76 Pa.Super. 292, 294 (1921). The chancellor thus had the power to provide for a lower interest rate in the event he found the rate proposed by the parties to be excessive or usurious. See Ennis' Estate, supra (affirming Orphans' Court's decree which awarded undertaker reasonable funeral expenses rather than full amount of his claim). By approving the agreement, the chancellor evidently deemed the interest rate to be reasonable, fair and just in light of the parties' circumstances, the proposed *384 payment plan and the fact that the debt had not been paid for more than two years at the time the agreement was reached. As there is nothing in the record evidencing an error of law or abuse of discretion, there is no basis upon which to overturn his decision at this late date.
Appellant next argues that the Orphans' court erroneously calculated the amount owed to appellee by awarding compound rather than simple interest. Contrary to appellant's assessment, the chancellor did not award compound interest to appellee. With regard to this issue, our Supreme Court has stated:
It is generally true that the law of this Commonwealth frowns on an award of compound interest on a debt except where the parties agree to it or a statute expressly authorizes it. However, lawful interest from the time of obtaining the judgment is expressly allowed by statute to the judgment creditor in an action to enforce the judgment. In. . . addressing the issue [of] whether to allow interest from the date of [an] arbitrator's award, [this Court] stated:
The award had the effect of a verdict fixing the loss, with compensation for detention in payment added, and interest on the total sum found due was thereafter allowable. Compound interest is not allowable but the addition to the total award here sued on did not controvert this rule, and is therefore not objectionable as constituting double compensation.
Clearly then, statutory and case law of this Commonwealth have long favored an award of interest in an action on a prior judgment even where that prior judgment included an award of interest. . . . Quite simply put, interest awarded as to the principal amount of the claim merges with the principal awarded and becomes thereby an integral part of the judgment. . . .
Ralph Myers Contracting Corp. v. Commonwealth of Pennsylvania, Department of Transportation, 496 Pa. 197, 201-204, *385 436 A.2d 612, 614-615 (1981) (citations omitted; emphasis in original).
The record reflects that the Orphans' Court awarded appellee simple interest on the principal balance owed by appellant. See 1975 Order and Adjudication and Decree. The interest thus merged with the principal balance and became part thereof. Ralph Myers Contracting Corp. v. Commonwealth of Pennsylvania, Department of Transportation, supra. With each year that the debt remained unpaid, the principal balance necessarily had to be adjusted to include the amount of interest which had accrued thereon; to do otherwise would deprive appellee of the interest to which he was lawfully entitled pursuant to the directives of the Orphans' Court. The chancellor therefore correctly calculated the amount owed to appellee and did not improperly award compound interest.
Appellant's final challenge pertains to the lower court's inclusion of interest from the time she ceased payments in October 1975 until the date of the award on November 23, 1993. Appellant contends that interest from March 2, 1992 onward should have been excluded because appellee refused appellant's offer to compromise the amount owed. Appellant thus believes that her tender offer and appellee's refusal thereof stopped the accrual of additional interest on the debt. With respect to this issue, this court has commented:
The Supreme Court in [McCornack v. Sharples, 254 Pa. 541, 543, 99 A. 155, 155 (1916)] . . . stated:
Even when no demand for payment has been made, it has been held that interest should be paid from the time when there should have been an accounting and payment. It is a sound principle, equally applicable in equity or at law, that one who retains money, after it is justly due and payable to another should pay interest for the detention.
This rule is applicable despite the fact that the creditor's demands were in excess of the amount due. As stated by Mr. Justice Trunkey, speaking for the Supreme Court in West Republic Mining Co. v. Jones & Laughlins, 108 Pa. 55[, 69] (1884):

*386 In this state it seems to have been long understood that where it is the duty of the debtor to pay the sum he owes, and the creditor demands a greater sum, the debtor can only relieve himself from liability by tendering payment of the debt. A bona fide dispute as to the amount of the indebtedness is no bar to the accruing of interest. If a tender of payment falls short of the sum found to be due at the time of tender, interest runs on the whole.
Gold & Company, Inc. v. Northeast Theater Corp., 281 Pa.Super. 69, 76-77, 421 A.2d 1151, 1154-1155 (1980).
In applying these principles, this court has repeatedly held that a party must offer a legally sufficient tender, i.e., the tender must include interest which has accrued on the obligation to the date of the tender, to stop the running of interest. Kessler v. Old Guard Mutual Insurance Co., 391 Pa.Super. 175, 181, 570 A.2d 569, 572 (1990); Gold & Company, Inc. v. Northeast Theater Corp., 281 Pa.Super. at 77, 421 A.2d at 1155. Where a legally sufficient tender is refused, the party must pay the tender into court. Kessler v. Old Guard Mutual Insurance Co. and Gold & Company, Inc. v. Northeast Theater Corp., supra.
Appellant did not make a legally sufficient tender to appellee. Instead of tendering the full amount of the unpaid principal and the interest that had accrued thereon, which sum was in excess of $3,823.32,[3] appellant only tendered $2,574.24, an amount substantially less than that which was owed. See Appellant's Petition to Discharge Property from Lien, filed 10/21/93, at paragraph 11 and Exhibit E (Letter from Maurine Braun's counsel, John Rodgers to Stewart Barnhill Funeral Home, dated February 3, 1992). Appellant also did not pay *387 the tender into court once it was refused. Because appellant did not make a suitable tender, interest on the debt continued to accrue. Kessler v. Old Guard Mutual Insurance Co. and Gold & Company, Inc. v. Northeast Theater Corp., supra.
Appellant additionally suggests that appellee should be precluded from recovering interest due to his failure to bring appropriate action to enforce the payment schedule decreed by the Orphans' Court. As previously indicated, the appellate courts have long recognized that interest accrues on a debt which is due and payable even when no demand for payment has been made. Fernandez v. Levin, 519 Pa. 375, 379-380, 548 A.2d 1191, 1193 (1988); Gold & Company, Inc. v. Northeast Theater Corp., supra. Appellee's lack of diligence in enforcing the 1975 order and decree thus did not prevent the accrual of interest.
Moreover, appellee was not required to institute suit to enforce payment. Appellee's claim was protected by virtue of the charge on appellant's real estate until twenty years had elapsed. See 20 Pa.C.S.A. § 3554 (providing that a charge upon real property which has been recorded and indexed within twenty years after the payment or any part thereof becomes due shall remain on the real property for a period of twenty years from the time of indexing and no longer unless renewed for successive periods of twenty years). The charge in this case was duly recorded and indexed in September of 1977, almost two years after appellant had defaulted on her payments. Consequently, appellee was not required to take further action until 1997, at which time the charge would be irrecoverable unless renewed. The chancellor therefore properly included all of the interest, including that which accrued after appellant's compromise offer was rejected, in its order. Finding no error or abuse of discretion, we affirm.
Order affirmed.
FORD ELLIOTT, J., files a dissenting statement.
*388 FORD ELLIOTT, Judge, dissenting:
While I find myself in complete agreement with the Majority's resolution of appellant's first two issues, pertaining to whether an interest rate of 8% may be assessed, I am unable to concur in the analysis on issue three, concerning whether the trial court erred in calculating the amount owed to appellee by providing for compound rather than simple interest. I am of the opinion that compound interest was used to calculate the amount owed and that this was improper. Therefore, I must respectfully dissent.
This court has recently defined compound interest in Katzeff v. Fazio, 427 Pa.Super. 55, 628 A.2d 425 (1993). There we stated, ". . . we note that interest is compounded when it is added to the principal, the result of which is treated as a new principal for calculating the interest due for the next term." Katzeff at 64, 628 A.2d at 430. We went on to observe in Katzeff that our law disapproves of compound interest and that we will only permit it when the parties have provided for it by agreement[1] or a statute expressly authorizes it. I agree with both of those observations. However, I believe that instantly the Majority's opinion appears to allow the assessment of compound interest.
At page 15 of their opinion, the Majority state, "With each year that the debt remained unpaid, the principal balance necessarily had to be adjusted to include the amount of interest which had accrued thereon; to do otherwise would deprive appellee of the interest to which he was lawfully *389 entitled pursuant to the directives of the Orphans' Court." To me, this describes compound interest in its most classic sense.
I believe that appellant is only entitled to simple interest each year on the original principal of $1,116. At an 8% rate, this amounts to adding $89.28 to the amount owed by appellee each year. After 18 years, the time at which our litigants currently stand, the amount owed would have swelled to $2,723.04. Only by compounding interest each year for 18 years does one arrive at the even greater sum of $4,459.56.[2] This is precisely what was done below and is what the Majority have described in their opinion. Indeed, in its opinion dated February 11, 1994, the court below candidly admitted at page two that the interest here was compound.
The Majority recites Ralph Myers Contracting Corporation v. Commonwealth of Pennsylvania, Department of Transportation, 496 Pa. 197, 436 A.2d 612 (1981) in support of their position. From my reading of their opinion, the Majority appear to be interpreting Ralph Myers to embrace the concept that simple interest assessed each year merges with the principal and becomes the new principal upon which simple interest is calculated the next year. To me, this is simply another way of describing compound interest.
Moreover, my interpretation of Ralph Myers differs. Rather, I believe that Ralph Myers merely holds that where the original judgment or award contains an interest component, it does not amount to the compounding of interest to allow simple interest to be assessed each term on the total amount of the judgment until full payment is made. However, Ralph Myers still called for the assessment of simple interest only upon that original award. Ralph Myers merely addressed the question of what constitutes the total award on which interest then accrues.
The Ralph Myers court adopted the analysis propounded by its appellant, which analogized to a revival of judgment situation. *390 Quoting Fries v. Watson, 5 S. & R. 220, 222 (1819), the court stated:
In the first action of debt, the plaintiff would have recovered the amount of his original judgment, with interest. The principal and interest would then be thrown into one consolidated sum, which would form the amount of the judgment in the first action of debt. In the second action of debt, the recovery would be, of the amount of the sum recovered recovered in the first action of debt, with interest; and so, toties quoties. This is the principle contended for by the plaintiff. Nor is there any thing against equity in it. The payment of interest is occasioned by the default of the defendant. It is equitable, that he should pay interest on the whole sum detained from the plaintiff. And at each time when the plaintiff obtains judgment on a scire facias, the defendant, who makes default, detains from him the amount of the sum for which judgment was obtained.
Ralph Myers at 202, 436 A.2d at 615.
Under Ralph Myers, a plaintiff could effectively obtain a rudimentary form of compound interest through successive revivals of judgment. However, that is not the instant situation and I do not believe that the Ralph Myers court envisioned a case where each term's interest on a debt would be considered to merge with the principal. This would be tantamount to holding that compound interest may be awarded. Clearly, our law frowns on this and constrains me to voice the objection contained herein.
NOTES
[1] Appellee credited these payments towards the principal instead of attributing a portion thereof to the interest which had accrued. Consequently, the principal balance remaining on the account was $1,116.00 as of October, 1975 when the last payment was made. After appellant defaulted on her payments, appellee began computing simple interest on the debt in accordance with the 1975 order and decree. Accrued interest was thus added to the principal balance at the end of each year to arrive at a new principal balance, such that by October 8, 1993, appellant owed appellee the sum of $4,459.53.
[2] We will disregard this defect as it does not substantially preclude this court from engaging in effective and meaningful review of appellant's claims. See Pa.R.A.P., Rule 105(a), 42 Pa.C.S.A. (permitting the appellate courts to disregard the requirements or provisions of the appellate procedural rules except as otherwise provided in Rule 105(b)).
[3] Appellant owed $3,823.32 as of October 8, 1991. See Appellant's Petition to Discharge Property from Lien, filed 10/21/93, Exhibit D (Letter from Stewart Barnhill Funeral Home to Maurine Braun, identifying the amount of the principal balance, payments made thereon, and interest which had accrued from 1973 through October 8, 1991). The debt thus had accrued additional interest by the time appellant tendered her offer in March, 1992.
[1] At page 2 of its opinion, dated February 11, 1994, the trial court adopts the reasoning in a "Brief in Opposition to Petition to Discharge Property from Lien." That document urged that compound interest should be imposed because the parties had effectively agreed to it. In adopting this analysis, I believe that the court makes a combined finding of fact and conclusion of law with which I cannot agree. The only "agreement" here was in the form of a prior order of court, which stated, in pertinent part, "Mrs. Braun is to pay $50.00 a month on the 10th of each succeeding month until the principal and interest are paid off in full, at the rate of 8% interest on the unpaid balance." The court below has interpreted "unpaid balance" to refer to both principal and interest. I do not share that interpretation, but rather believe the "agreement" to be wholly ambiguous on this point. Thus, I would find no express agreement to pay compound interest.
[2] Our total is calculated to the October 8, 1993 anniversary date. The amount in the order in question, $4,534.32, is apparently calculated to a later date.