J-S69014-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| ESTATE OF SONDRA H. RUSSELL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: KENNETH L. BROOKS | No. 737 WDA 2017 |

Appeal from the Order Entered April 24, 2017
In the Court of Common Pleas of Fayette County
Orphans' Court at No(s): 115 OC 2014

BEFORE:   BOWES, RANSOM, AND STEVENS, P.J.E.,* JJ.

MEMORANDUM BY BOWES, J.:                    FILED  NOVEMBER 28, 2017

Kenneth Brooks appeals from an orphans' court order surcharging him and re-affirming his removal as administrator of this estate.  We affirm.

Sondra H. Brooks died intestate on February 7, 2014, and, on February 13, 2014, Appellant filed a petition for issuance of letters of administration on her estate.  Appellant set forth in that petition that, as a maternal first cousin, he was the sole intestate heir, and the Register of Wills of Fayetteville County issued letters of administration to Appellant, who was represented by Donald Blake Moreman.  Sondra was a widow with no children, no siblings, and parents who predeceased her.

On August 22, 2014, Edward Russell filed a petition for rule to show cause why Appellant should not be compelled to allow him to remove certain

_____

*  Former Justice specially assigned to the Superior Court.

of his personal property from the decedent's home and compelled to reimburse Mr. Russell for the funeral expenses that Mr. Russell had paid on behalf of the estate. Mr. Russell was romantically involved with Sondra for forty years, and certain of his belongings were in her home. Mr. Russell was granted relief. Appellant reimbursed the funeral expenses to Mr. Russell and, after Mr. Russell filed another petition, Appellant allowed Mr. Russell into Sondra's home to document which of the items therein belonged to him. Appellant subsequently failed to transfer to Mr. Russell some of his personal property remaining in Sondra's house.

On September 25, 2014, Jack Hann and Uganda Leighlighter filed a petition averring that Appellant should be removed as administrator. They claimed that decedent had numerous paternal first cousins, that Appellant personally knew both Mr. Hann and Ms. Leighlighter, that Appellant knew that they were Sondra's paternal first cousins, that he thus knew that they were intestate heirs, and that the petition for letters of administration that Appellant filed was factually incorrect. In their petition, Mr. Hann and Ms. Leighlighter also alleged that they never were notified of the opening of the estate, even though they were co-equal intestate heirs with Appellant, and they also noted that Appellant had not performed any function to fulfill his obligations as administrator. Specifically, Appellant had not filed an inventory and had not placed the decedent's home on the market. On March 26, 2015, a consent order was entered appointing Mr. Hann and Appellant as

co-administrators. Mr. Hann subsequently discovered that there were fourteen paternal first cousins with the same degree of consanguinity to decedent as Appellant held.

Mr. Hann thereafter filed a second petition requesting removal of Appellant as co-administrator. Mr. Hann set forth that Appellant refused to turn over any records of accounts or other personal assets owned by Sondra. On September 3, 2015, Appellant was removed as administrator, and Mr. Hann was named as the sole administrator of the estate. On October 1, 2015, the estate attorney was ordered to return $24,000 that Appellant had paid him three months after the estate was opened.

Mr. Hann then filed a motion for Appellant to be required to return funds to him, and Mr. Russell filed a petition to enforce and for contempt against Appellant because Appellant had not returned certain of Mr. Russell's belongings to him. The court held a hearing, and, in an order dated April 21, 2017, and entered on April 24, 2017, the orphans' court disallowed the $24,000 advanced to Mr. Moreman as an estate expense, thus surcharging Appellant for that amount. The orphans' court also surcharged Appellant for $4,000 in personalty that Mr. Russell had not received. In the April 21, 2017 order, the court also reaffirmed its decision to remove Appellant as administrator. This appeal followed. Appellant raises these various issues on appeal:

I. As the burden of production and persuasion is on the moving party, whether there was sufficient tangible documentary evidence produced by the moving party generally and in the following particulars to support the Court's findings/order:

    a. The Court accepted the testimony of Edward Russell, even though opining from the bench that Mr. Edward Russell did not know too much of anything.

    b. The Court accepted testimony of Jack Hann, Co-Administrator, without any basis, even when he testified that he did not remember, but chastised Kenneth L. Brooks for not remembering everything.

    c. The Court did not accept the testimony of Kenneth L. Brooks and Kenneth R. Brooks with respect to all of the decisions being made with respect to estate administration after the appointment of the Co-Administrator, being joint decisions; even though Jack Hann, Co-Administrator, did not dispute this testimony.

    d. The Court did not accept the testimony of Kenneth R. Brooks with respect to the number of firearms and disposition; but rather, appeared to accept the testimony of Edward Russell (the same Edward Russell the Court said did not know too much of anything) without any basis.

    e. The Court did not accept the Authorization to Represent the Estate of Sondra Russell in Litigation dated May 15, 2014, which reads that a retainer of $24,000.00 would be billed at the rate of $210.00 per hour for estate litigation.

    f. The Court did not accept that the Litigation retainer was in response to prior counsel of Edward Russell threatening litigation a month after decedent's death and counsel demanding support for the informal claim, before the claim was made formally (which it was never filed as a claim).

g. The Court did not accept testimony that Edward Russell had sole care, custody and control of the decedent's residence and personalty until Kenneth L. Brooks appointment on February 13, 2014.

h. The Court did not accept testimony that the residence was listed with a realtor shortly after the initial stage of litigation resulted in the appointment of the Co-Administrator.

i. The Court did not accept testimony that Edward Russell frustrated Kenneth L. Brooks' efforts by intercepting Decedent's mail. (regarding life insurance, stock etc.)

j. The Court did not accept testimony that Kenneth L. Brooks had installed a security system at decedent's residence requiring the internet (Armstrong Cable in the area.); but rather chastised Brooks for incurring the cable bill after death.

k. The Court did not accept the testimony the Kenneth L. Brooks, through Kenneth R. Brooks, had secured the buyer for the decedent's residence; which was finalized through the Real Estate Broker secured by Kenneth L. Brooks.

l. The Court apparently considered a Motion to Enforce which was filed after the hearings were begun, thereby considering issues not properly before the Court.

m. The Court, without any basis nor testimony in support, concluded that the clean up, fix up, auction or storage should have been accomplished before any of the within litigation commenced.

n. The Court, without having any testimony of value of anything, concluded that Edward Russell was improperly deprived of at least $4,000.00 worth of property.

o. The Court, over testimony that the Co-Administrators, agreed to continue a $100.00 yearly donation to the local volunteer fire department servicing the decedent's residence, erroneously attributed the decision to Kenneth L. Brooks alone.

p. The Court erroneously determined that Kenneth L. Brooks was retired and not working; when, in fact, Kenneth L. Brooks, during all times relevant herein, was and is employed by the Connellsville School District during regular business hours.

q. The Court erroneously determined that Jack Hann did not have access to the Decedent's residence; when, in fact, Jack Hann had full access to the decedent's residence by having the alarm code on the alarm system to gain access to the residence.

r. The Court erroneously determined that Jack Hann did not have access to the Decedent's property; when, in fact, Jack Hann had access to all of the decedent's property, as he was listed on the Estate bank account, with full access.

s. The Court determined that since Brooks was completely removed in September 2015, the Estate Administration has improved dramatically; when, in fact, Administration was completed by Kenneth R. Brooks assisting Kenneth L. Brooks locating a buyer for the decedent's residence; and, when the Court received no evidence of any Administration after Kenneth L. Brooks' removal.

t. The Court erred by not considering the detailed, dated, billing of services provided pursuant to the Authorization to Represent. The detailed billing, as submitted by counsel for the movant, will speak for itself; Kenneth L. Brooks neither wrote nor fully understood the billing - as he testified. Kenneth L. Brooks testified that he knew there was a bill and it would be addressed after this was over.

II. Whether the Court erred by not following contempt procedures.

Appellant's brief at 4-9 (typographical errors corrected).

Initially, we outline our established standard of review herein:

Our standard of review of an orphans' court's decision is deferential. When reviewing an orphans' court's decree, this Court must determine whether the record is free from legal error and whether the orphans' court's findings are supported by the record. Because the orphans' court sits as the finder of fact, it determines the credibility of witnesses and, on review, this Court will not review its credibility determinations absent an abuse of discretion.

Estate of Sachetti v. Sachetti, 128 A.3d 273, 282-83 (Pa.Super. 2015) (citations omitted).

We next observe that the eighteen sub-issues raised in Appellant's first statement of questions involved in this appeal are not developed in the argument portion of his brief, and he provides no case authority on the merits of questions I. a-t. Appellant's failure to argue these contentions and provide legal authority to support his positions results in their waiver on appeal. Korn v. Epstein, 1727 A.2d 1130, 1135 (Pa.Super. 1999) (citation omitted) ("Where the appellant has failed to cite any authority in support of a contention, the claim is waived.") Even if not waived, sub-issues I. a-t concern the decision of the orphans' court to credit certain testimony and disregard other testimony. As the above standard of review indicates, this Court cannot reverse the credibility determinations of the orphans' court absent an abuse of discretion. The orphans' court provided a explanation for

all of its credibility determinations in its Pa.R.A.P. 1925(b) Opinion filed on June 20, 2017, and to the extent necessary, we rely on that in concluding that there is no abuse of discretion.

In the argument portion of his brief, Appellant first maintains that there was insufficient evidence produced by the moving parties to support the April 21, 2017 order. Appellant's brief at 15. He claims that his removal as administrator was unsupported by the proof. Appellant's brief at 15-18. The removal of a personal representative is a final, appealable order. Pa.R.A.P. 342(a)(5) ("An appeal may be taken as of right from . . . orders of the Orphans' Court Division . . . determining the status of fiduciaries . . . in an estate."). Appellant was removed as administrator on September 3, 2015, and, on that date, Mr. Hann was named as the sole administrator. That order was not appealed, even though it was final.

The failure to appeal a final order results in the issue decided therein as being res judicata. Estate of Braun, 650 A.2d 73, 76 (Pa.Super. 1994) ("The failure to appeal from a final order renders the doctrine of res judicata applicable."); see also U.S. National Bank v. Johnson, 487 A.2d 809 (Pa. 1985). Appellant failed to timely appeal the September 3, 2015 removal order, which means the issue of whether he should have been removed as administrator has been finally litigated and cannot be re-visited in this appeal from the April 21, 2017 order, which merely re-affirmed the prior decision that Appellant was properly removed as administrator of the estate.

Appellant also contends that the court erroneously concluded that the $24,000 in attorney's fees that he tendered to the estate attorney three months after the estate was opened was not a proper estate expense, essentially surcharging Appellant for those attorney's fees.[1] Appellant's brief at 18-19. The amount of attorney's fees awarded from an estate is committed to the discretion of the orphans' court. In re La Rocco's Trust Estate, 246 A.2d 337 (Pa. 1968); Estate of Geniviva, 675 A.2d 306 (Pa.Super. 1996). Herein, the only work that Mr. Moreman actually performed on behalf of the estate was to complete the form for a petition for Appellant to be appointed as administrator. The remainder of Mr. Moreman's efforts were expended on defending Appellant personally for his utter failure to fulfill his duties as administrator, turn over the estate records to Mr. Hann after he was appointed administrator, and to return Mr. Russell's personal property to him. Appellant maintains that the $24,000 was paid to Mr. Moreman as a litigation retainer, but the litigation that Mr. Moreman conducted was not performed to benefit the estate. Appellant should have immediately reimbursed the funeral expenses advanced by Mr. Russell. As administrator, he also should have promptly ascertained what property in Sondra's home belonged to Mr. Russell and returned it to him. Anything

_____

[1] A surcharge is immediately appealable. Estate of Cherwinski, 856 A.2d 165 (Pa.Super. 2004).

done by Mr. Moreman after filing the factually-inaccurate petition for letters of administrator were not conducted on behalf of the estate but instead performed to defend Appellant against misfeasance and malfeasance. Thus, the court properly determined that the estate is not responsible for the $24,000 in fees paid to Mr. Moreman from estate funds and that the sum in question is owed by Appellant.

In the argument portion of his brief, Appellant also avers that the orphans' court did not follow the proper procedures to find him in contempt. Appellant's brief at 19. As the orphans' court observed, Appellant received notice and an opportunity to be heard. Additionally, Appellant does not delineate what steps were not followed herein in connection with the contempt procedure. Finally, the amounts awarded against Appellant were not in the nature of contempt fines. Rather, they are properly characterized as surcharges for improper payment of estate funds to Mr. Moreman and for failing to properly fulfill his duties as administrator by returning all of Mr. Russell's property to him. We thus reject Appellant's final claim on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/2017

- 10 -

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

FILED
06/20/2017 3:38:09 PM
REGISTER OF WILLS
FAYETTE COUNTY
PENNSYLVANIA
Inst Num: 201707069

In re: ESTATE of SONDRA H. RUSSELL, deceased.

ORPHAN'S COURT

No. 26-14-0115

# Pa.R.A.P. 1925(a) Opinion

The within matter was resolved by way of Findings of Facts and Conclusions of Law on April 21, 2017, which document is incorporated herein by reference. Respondent filed a "Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b)" on June 13, 2017, and this Opinion is authored in response thereto.

The Errors Complained of, followed by this Court's response, are as follows:

1. The burden of production and persuation [sic] is on the moving party. It is alleged error that sufficient tangible documentary evidence was not produced by the moving party generally and in the following particulars to support the Court's findings/order:

Judge Steve P. Leskinen
Fayette County Court of Common Pleas
61 E. Main St. Uniontown, PA 15401

1

a.     The Court accepted the testimony of Edward Russell without any basis to do so, after the Court exclaimed in response to a request to keep the record open for deposition of a potential witness who had been hospitalized, that Mr. Edward Russell certainly did not know much of anything. *[The basis for accepting the testimony of Edward Russell despite his memory being incomplete was because he appeared more credible in honestly attempting to answer questions than the testimony that opposed his. He honestly admitted that his lack of memory on some specifics was because: "That's what comes with old age, I guess." (Tr. 1/25/16, p. 73). Appellant's unwarranted refusal to pay the funeral bill and return Edward Russell's personal property is what originally exposed Appellant's maladministration of this estate. By the time of the hearing, Edward Russell had recovered most of his personal property, had been relieved of the obligation of paying the funeral bill, and had no contingent interest as an heir. In contrast, Mr. Brooks had attempted to claim the entire estate by misrepresenting himself as the sole heir (instead of a one-fifteenth heir), and attempted to*

*justify that on the basis of his own poor memory. Mr. Brooks also underreported the value of the estate assets, held onto cash receipts without properly reporting them, claimed excessive expenses had been paid in cash without receipts or any record, and attempted to transfer guns belonging to Mr. Russell from the estate to his son on the transparently false pretense that the female decedent—who did not hunt and was not reputed to collect guns—owned the entire gun collection. The decision on credibility was not difficult.]*

b.   **The Court accepted testmony [sic] of Jack Hann, co-Administrator, without any basis, even when he testified that he did not remember, but chastised Kenneth L. Brooks for not remembering anything.** *[Again, the decision on the credibility of the various witnesses was not a close call. None of the witnesses had perfect recollection, and all of them were impeachable on one or more areas of their testimony, but on balance, the testimony of Jack Hann and Edward Russell was substantially more believable than the opposing testimony.]*

c.    The Court did not accept the testimony of Keneth [sic] L. Brooks and Kenneth R. Brooks with respect to all of the decisions being made with respect to estate administration after the appointment of the Co-Administrator, [sic] being joint decision [sic]; even though Jack Hann, Co-Administrator, did not dispute this testmony [sic]. *[Jack Hann may or may not have acquiesced in some poor decisions while serving as co-administrator. That did not excuse Appellant Brooks from his own responsibility for those decisions. No one has presented a legal challenge to Hann's conduct.]*

d.    The Court did not accept the testimony of Kenneth R. Brooks with respect to the number of firearms and disposition; but rather, appeared to accept the testimony of Edward Russell (the same Edward Russell the Court said did not know too much of anything) without any basis. *[Again, the credibility question was not a close call between Russell's admitted but honest inability to remember every detail and Brooks' deliberate defense tactic of claiming a*

*loss of memory whenever a truthful recollection could have been against his personal interest.]*

e.      The Court did not accept the Authorization to Represent the Estate of Sondra Russell in Litigation dated May 15, 2014, which reads that a retainer of $24,000.00 would be billed at the rate of $210.00 per hour for estate litigation. *[The Court accepted that the fee agreement was signed, and does not quarrel with a $210 per hour rate in the abstract. However, the Court concluded that the litigation was only necessary because of the bad faith, the unwarranted delays, the unreasonable legal positions, and the self-interested self-dealing exhibited by Brooks and his counsel.]*

f.      The Court did not accept that the Litigation retainer was in response to prior counsel of Edward Russell threateniing [sic] litigation a month after Decedent's death and counsel demanding support for the informal claim, before the claim was made formally (which it was never filed as a claim). *[Such alleged threats were not made clear on the record, and may have been part of settlement discussions. To the*

*extent this assertion is an attempt to blame the opposing party for causing the litigation, the assertion is factually inaccurate. Brooks was made the sole personal representative 6 days after the decedent's death. From his appointment on February 13, 2014 until the Motion for Rule to Show Cause was presented on September 3, 2014, no inventory was filed, no advertisement for heirs was published, no advertisement of appointment of the representative was published, no auction of personal property was arranged, and no listing agreement for the real estate was signed. Discovery was ordered and only complied with after court orders were entered. Until other heirs intervened on their own behalf, Brooks falsely represented himself as being the sole heir. The bulk of the heirs ultimately had an attorney enter an appearance on their behalf in December of 2014, and they were not found by Brooks. The home was not sold until October, 2015, twenty months after Brooks was originally appointed. The cash sale of the automobile was not reported and the proceeds not deposited. The auto was reported at a value more than $4,000 below the actual sale price, even though it was allegedly already sold.*

Judge Steve P. Leskinen
Fayette County Court of Common Pleas
61 E. Main St. Uniontown, PA 15401

*Guns not owned by the decedent were transferred to Brooks' son, purportedly in exchange for services rendered. Proper legal advice, good faith and a reasonable level of diligence would have avoided the necessity of any litigation.]*

g.    The Court did not acept [sic] testimony that Edward Russell had sole care, custody and control of the decedent's residence and personalty until Keneth [sic] L. Brooks appointment on February 13, 2014. *[The six days referred to does not appear to be material—perhaps Edward Russell could have retrieved his guns and other personal property from the house during that interval and practically eliminated Brooks' opportunity to make the claim that Decedent owned those items, but he did not do so.]*

h.    The Court did not accept testmony [sic] that the residence was listed with a realtor shortly after the initial stage of litigation resulted in the appointment of the Co-Administrator. *[The Co-Administrator, Jack Hann was not appointed until April 1, 2015, almost fourteen months after Decedent's death and Brooks'*

*appointment as Administrator. The home should have been on the market long before that date, so the fact that it was put on the market shortly thereafter does not materially help Brooks' position.]*

i.      The Courtt [sic] did not accept testimony that Edward Russell frustrated Kenneth L. Brooks' efforts by intercepting Decedent's mail. (regarding life insurance, stock etc...) *[Whether or not this occurred does not appear to be very consequential. The personal representative had every right to go to the post office on the day he was appointed and order that the mail be forwarded to him. Evidently this is one of many things he failed to perform.]*

j.      The Court did not accept testimony that Kenneth L. Brooks had installed a security system at Decedent's residence requiring the internet (Armstrong Cable in the area.); but rather chastised Brooks for incurring the cable bill after death. *[The testimony may have conflated cable tv service with internet service. The Court's ruling was that cable tv*

*service was completely unnecessary to the estate administration, and should not have been incurred.]*

k.    **The Court did not accept the testimony the [sic] Kenneth L. Brooks, through Kenneth R. Brooks, had secured the buyer for the decedent's residence; which was finalized through the Real Estate Broker seccured [sic] by Kenneth L. Brooks.** *[It does not matter who directed the ultimate buyer to the listing agent—the property was ultimately sold twenty months after the decedent's death, and only after the Court had to appoint a co-administrator to force the administration to proceed. Both co-administrators signed the listing agreement, and extra credit is not awarded to the person who first suggested the particular realtor chosen.]*

l.    **The Court apparently considered a Motion to Enforce which was filed after the hearings were begun, thereby considering issues not properly before the Court.** *[The Court believes all issues were properly considered after notice and an opportunity to be heard was given to all persons affected by the decision*

*of the Court. Responding to this claimed error is difficult*

*without reference to any specific issue or issues.]*

m. The Court, without any basis nor testimony in support, concluded that the clean up, fix up, auction or storage should have been accomplished before any of the within litigation commenced. *[The time delays speak for themselves, and there was no valid excuse ever offered for Brooks' failure to administer the estate in a good faith and timely fashion.]*

n. The Court, without having any testimony of value of anything, concluded that Edward Russell was improperly deprived of at least $4,000.00 worth of property. *[This damages figure is an estimate based on the photos and descriptions of the misappropriated property, the damages described to the guns and the value attributed to the lost and damaged property by the appraiser and Mr. Edward Russell. Had the estate been administered in a good faith and efficient manner, there would have been no loss to recoup at all.]*

o. The Court, over testimony that the Co-Administrators, [sic] agreed to continue a $100.00

yarrly [sic] donation to the local volunteer fire department servicing the decedent's residence, erroneously attributed the decision to Kenneth L. Brooks alone. *[Again, the decisions made by Jack Hann were not challenged, so he was not forced to defend his role, If any. The donation was presented as a charitable donation. As worthy a charity as the fire department is, a personal representative has no legal authority to make charitable donations not authorized by any testamentary document. Donations to volunteer fire companies could arguably be considered a payment to secure their services, but only if the legislature authorized such treatment.]*

p.    The Court erroneously determined that Kenneth L. Brooks was retired and not workeing [sic]; when, in fact, Kenneth L. Brooks, during all times relevant herein, was and is employed by the Connellsville School District during regular business hours. *[Whether or not Brooks was retired is a detail that was not material, and perhaps should not have been included. A personal representative is required to to*

*exercise reasonable diligence in performing the duties required by their oath whether or not they are employed elsewhere.]*

q.   The Court erroneously determined that Jack Hann did not have access to the Decedent's residence; when, in fact, Jack Hann had full access to the decedent's residence by having the alarm code on the alarm systen [sic] to gain access to the residence. *[This Court will rely on the record of testimony. Hann had no access until he was appointed Co-administrator, and may or may not have been as assertive as he should have been after he was appointed.]*

r.   The Court erroneously determined that Jack Hann did not have access to the Decedent's property; when in fact, Jack Hann had access to all of the decedent's property, as he was listed on the Estate bank account with full access. *[Same response.]*

s.   The Court determined that since Brooks was completely removed in September 2015, the Estate Administration has improved dramatically; when, in

fact, Administration was completed by Kenneth R. Brooks assisting Kenneth L. Brooks locating a buyer for the decedent's residence; and, when the Court received no evidence of any Administration after Kenneth L. Brooks' removal. *[The house was listed after Hann was appointed and sold after Brooks was finally removed, and that alone was a dramatic improvement over the first fourteen months of administration. As noted above, whether or not the ultimate buyer spoke to someone before talking to the realtor is immaterial.]*

t.    The Court erred by not considering the detailed, dated, billing of services provided pursuant to the Authorization to Represent. The detailed billing, as submitted by counsel for te [sic] movant will speak for itself; Kenneth L. Brooks neither wrote nor fully understood the billing—as he testified. Kenneth L. [sic] Brooks testified that he knew there was a bill and it would be addressed after this was over. *[Again, the issue with the attorney's fees is not the amount of time spent or the reasonable hourly rate—although there*

*was evidence that hours were exaggerated and/or not reasonably necessary—the Court found that there would have been no need for litigation if proper legal advice was given and the estate was diligently administered in good faith. Moreover, securing a $24,000.00 advance "retainer" for litigation in an estate then valued at just over $200,000 is facially unreasonable, more particularly so when the incorrect and obdurate legal positions taken by counsel were the primary reason for the lititgation.]*

2. **The Court erred by not following contempt procedures.**

*[This Court is unable to discern what this alleged error specifically refers to. All parties adversely affected by the Court's rulings had fair notice and an extended opportunity for a hearing on all issues.]*

ATTEST:

_____
CLERK OF ORPHANS COURT

BY THE COURT:

_____
STEVE P. LESKINEN, JUDGE

Judge Steve P. Leskinen
Fayette County Court of Common Pleas
61 E. Main St. Uniontown, PA 15401
14